No. 14,582.

## MILLER, ADMINISTRATOR, v. WOHLFORD ET AL.

WILL.— *Widow.*—*Emblements.*— A testator's will provided that his wife should receive during her life one-third of all grain raised on certain land, the same to be delivered to her in the county at any point she might designate, as soon as it should be harvested and prepared for the market according to good husbandry. The title to the land and the right of possession were vested in other persons. The provision for the widow's benefit was made a charge upon the land. She regularly received from the occupants of the land one-third of the grain harvested up to the time of her death, which occurred in the month of May, several years after the testator's death. Her administrator now seeks to recover the value of one-third of the crops planted prior to her death but not harvested and prepared for the market until after that time.

*Held,* that as the time for harvesting and delivering the grain, as provided in the will, had not arrived at the time of the widow's death, there was nothing to go to her legal representatives, and that the action can not be maintained.

From the Elkhart Circuit Court.

*W. H. Vesey* and *C. W. Miller,* for appellant.

*L. Wanner,* for appellees.

BERKSHIRE, J.—The appellant, administrator, with the will annexed, of the widow, filed his complaint to recover her share of the crops growing on certain real estate at the time of her death.

To this complaint appellees each demurred for want of facts. Their demurrer was sustained by the court, and appellant refusing to plead over, judgment was rendered against him for costs. To this ruling of the court appellant excepted and prayed an appeal.

The only question for the consideration of this court involves the sufficiency of appellant's complaint. The complaint is in words and figures following:

VOL. 119.—20

" The plaintiff, Thomas Miller, administrator with the will annexed of Sarah Wohlford, deceased, complains of the defendants and says that long before the decease of the said Sarah Wohlford, to wit, on the —— day of May, 1881, her husband, one Samuel Wohlford, departed this life testate, leaving his last will and testament, which was immediately thereafter duly admitted for probate and is now on record in Will Record No. 3, on pages 24 to 40 inclusive, of the public records of said county, a copy of which is filed herewith, made a part hereof and marked ' Exhibit A ' ; that according to the terms of said last will and testament, her husband, the said Samuel, devised and bequeathed to her, the said Sarah, one-third interest in and to all the grain which should be raised for and during the period of her natural life, by any and all persons who should during said period come into the possession or occupancy thereof, of the following described real estate situate in said county and State, to wit : The southwest quarter (¼) of section twenty-eight (28), in township thirty-seven (37) north, range six (6) east; containing one hundred and sixty acres, which said tract was, according to the terms of said last will and testament, devised to the defendant Reuben Wohlford, subject to the said right of said Sarah as aforesaid ; and also the northwest quarter (¼) of said section, excepting thirty (30) acres out of the northeast corner thereof, theretofore sold to one David Logan and one Israel Wolfe, and also excepting twenty (20) acres theretofore sold to one George A. Snyder, leaving about one hundred and ten acres, which was, by the terms of said last will and testament, devised to the children of the testator's son, Samuel Wohlford, Jr., deceased, being the other defendants herein, subject to the rights of said Sarah as above set forth ; that according to the terms of said last will and testament, any and all persons occupying, possessing or farming said real estate during the lifetime of the said Sarah, held the same subject to her estate as aforesaid, and not otherwise, and subject to the right of said Sarah to have such one-third part

of all the grain which should be raised upon said real estate as aforesaid, delivered to her at any point in said county and State she should designate, by the person or persons so occupying or having possession thereof, free of expense to her, as soon as the same should be harvested and prepared for market according to good husbandry; and to the end that said Sarah should receive one-third part of all of said grain, and the delivery thereof be secured to her as aforesaid, her said right to one-third part of such grain and the delivery of the same to her as aforesaid was, according to the terms of said last will and testament, made a charge upon the whole of said land and a continuing lien thereon, to be in no manner divested; that the said Sarah elected and took, under and by virtue of said last will and testament, the property therein devised and bequeathed to her, and the defendants duly entered upon said real estate and took possession of the same, according to their respective interests, under and by virtue of said last will and testament as therein set forth, and the defendants turned over to the said Sarah her share of said grain, as above set forth, from the time of the death of said testator to a short time prior to the death of said Sarah. But the plaintiff says that the said Sarah departed this life on the — day of May, 1887, and that prior to her decease the defendants, occupying the said premises as above set forth, sowed a large acreage of wheat, corn and oats on said real estate, one-third of which belonged to the said Sarah as aforesaid; that said wheat, corn and oats were, after the death of said Sarah, duly gathered, harvested and threshed and prepared for market by the defendants herein, according to said last will and testament; that said wheat, corn and oats, as raised by the defendants and prepared for market according to the terms thereof, amounted to one thousand four hundred and twenty-three bushels of wheat, five hundred bushels of corn, and six hundred and eighteen bushels of oats, one-third of which belonged to the estate of said Sarah as aforesaid; that said wheat at said time was and still is of the

value of seventy-two cents per bushel, and said corn was and still is of the value of fifty cents per bushel, and said oats of the value of thirty-two cents per bushel; that the said Sarah, at the time of her decease, save and except her right in and to said grain as above set forth, was entirely destitute, and in consequence thereof plaintiff, as administrator with the will annexed of her estate, has been wholly unable to pay any of the court costs in her estate, her funeral expenses, expenses of her last sickness, and many other just claims against her estate, all of which are long past due and wholly unpaid; that the plaintiff, administrator with the will annexed of the said Sarah, in such capacity, has often, prior to the bringing of this suit, demanded of the defendants the delivery of said grain belonging to her estate according to the terms of said last will and testament, but the defendants refused, and although said grain was prepared for market long before the bringing of this suit, according to the terms thereof, the defendants still refuse so to do, and assert to this plaintiff that the estate of said Sarah has no interest in said grain. Plaintiff avers that the defendants Delilah P. Wohlford, Catherine A. Wohlford, George W. Wohlford and Lewis H. Wohlford have not yet attained the age of majority, and asks that a guardian *ad litem* be appointed and make defence hereto according to their respective interests. Wherefore plaintiff, as administrator with the will annexed of the estate of Sarah Wohlford, deceased, demands judgment in the sum of eight hundred dollars, for the enforcement of said lien, and the sale of said real estate for the satisfaction thereof, and all other proper relief."

This is an action to recover the value of emblements to which the appellant claims he was entitled as the legal representative of his decedent.

In order to entitle one claiming to be a tenant, or his legal representative, to emblements, the following facts must appear: 1. The existence of a tenancy of uncertain duration. 2. A termination of the tenancy by the act of God or by the

act of the lessor. 3. That the crop was planted by the tenant, or some one claiming under him, during his right of occupancy. Washburn on Real Property, vol. 1, p. 140, 5th ed., says: " But it is essential to the claim of emblements, at the common law, that the crop should have been actually planted during the life and occupancy of the tenant. No degree of preparation of the ground will give to one the fruits of seed planted by another after the determination of his tenancy. In order to entitle a tenant or his executors to emblements, the estate which he has must, in the first place, be uncertain in its duration." On page 141 we find the following : " So, in the second place, the tenancy must be determined by the act of God, as by death of the tenant, or the act of the lessor in expelling him or terminating his lease." On page 143 it is said : " To avail himself of the emblements, it is obvious that the tenant or his representative must have some right of entry or occupancy of the land itself; and if the tenancy is determined by death or otherwise soon after the planting of a crop, this right may of necessity be continued for some months. The extent of this right may be stated to be this : He may enter upon the land, cultivate the crop if a growing one, cut and harvest it when fit, and if interfered with in the reasonable exercise of these privileges by the landlord or reversioner, or if the crop be injured by him, he may have an action for the same." Tiedeman Real Property, section 70, says : " Emblements are the profits which the tenant of an estate is entitled to receive out of the crops which he has planted, and which have not been harvested, when his estate terminates." In the same section this author further says : " As an incident to the right of emblements, the tenant or his representatives have a right of entry upon the land, after the termination of the tenancy, for the purpose of attending to the crop while growing, and for harvesting it when ripe. The right of ingress and egress, however, is limited to what is necessary for these purposes." In section 71 we find the following: " In order that a

tenant may claim emblements, he must show that *his estate* [the italics are our own] was one of uncertain duration." In Taylor's Landlord and Tenant, section 534 (8th ed.), the author says: "A tenant for life, or his legal representatives and under-tenants, as well as a tenant from year to year, or at will, is entitled to emblements; which means a right to take and carry away, within a reasonable time after his tenancy has ended, such annual productions of the soil as are raised by his labor. * * * This privilege is allowed to tenants for life, at will, or from year to year, and even to tenants for years, whose estate may be terminated by some uncertain event, because of the uncertain nature of their estates, and lest they should be deterred from the proper cultivation of their lands. And the general rule upon this subject is, that if the term is so uncertain, that the tenant at the time he sows his crop can not know that his tenancy will continue, until he shall have reaped it, he will be entitled to the crop as emblements."

Where a tenant abandons possession and leaves the immature crop, the landlord may enter and appropriate it without legal process. *Sharp* v. *Kinsman*, 18 S. C. 108. In *Stewart* v. *Doughty*, 9 Johns. 110, the court says: "The preparation of the ground for the reception of seed is not necessarily a substitute for the right to the emblements, for it may apply to clearing and manuring and ploughing ground, and these acts may have taken place long before seed-time. The common law has established a distinction in respect to this very subject of emblements, between the right to emblements and the costs of ploughing and manuring the ground, so that the determination of an estate at will would give to the lessee his emblements, but not any compensation for these improvements. He might be ousted of the possession before the crop was in the ground." See *Price* v. *Pickett*, 21 Ala. 741; *Humphries* v. *Humphries*, 3 Ired. L. 362; *Hawkins* v. *Skeggs*, 10 Humph. 31.

In the case of *Stout* v. *Dunning*, 72 Ind. 343, referred to

by counsel for appellant, it is held that, by the terms of the conveyance, James B. Stout was entitled to the possession of the real estate; and in the case of *Davidson* v. *Koehler*, 76 Ind. 398, cited, the widow of the testator was held to be a life tenant and entitled to the occupancy of the real estate. The will in express terms gave to her the right of occupancy. In *Lindsey* v. *Lindsey*, 45 Ind. 553, the will gave to the widow the possession of the real estate during life. Under the will there can be no question but that she was a life tenant. We think the principle here involved is covered by what was ruled in the case of *Watson* v. *Penn*, 108 Ind. 21. It was held in that case that where the testator by his will gave certain real estate to his wife, which at the time was occupied by a tenant, and she died before the time came for the payment of the rent, it passed to the reversioner and not to the representatives of the life tenant.

There is no doubt, we think, as to the correctness of the conclusion reached in the cases of *Thompson* v. *Schenck*, 16 Ind. 194, and *Rumsey* v. *Durham*, 5 Ind. 71, that a devise of the rents and profits of land carries the legal title, but the difficulty in the way of the appellant is that the rents and profits did not pass by the will to his decedent. We can imagine no theory upon which this action can be maintained.

The decedent was in no sense a tenant of the real estate on which was raised the emblements sued for. Under her husband's will she had no estate in the land, and no right to the possession. She did not plant the crops, nor did any one claiming to hold as a sub-lessee under her do so.

The will of the testator vested the title at once, upon his death, in the appellees, with the immediate right of possession, and they planted and cultivated the crops. By the will the one-third part of all the grain raised upon the real estate was, during the natural life of the decedent (widow), given to her during her natural life, to be delivered yearly in the bushel, at any point that might be designated by her in Elkhart county, as soon as the same should be harvested

or gathered, according to good husbandry.    By the provision thus made for her the decedent was not entitled to the crops which she was to receive until they were harvested ; until then they were not due to her.    Until delivered to her the title to the emblements remained in the tenant in possession, who planted the same.    The provision as made was simply a provision for the decedent's support, and by the will of her husband, whereby the provision was made, its performance was secured as a lien upon the real estate.    Had the tenant in possession refused to deliver the one-third of the grain, the decedent could have maintained no action for its recovery, nor had she such an interest in it as to render it subject to execution as against her.    The most that can be said is, that the tenant in possession could satisfy the provisions of the will made for the support of the decedent by delivering to her the one-third of the grain raised yearly, as therein provided, and upon a failure so to do she had a right of action for the value, secured by an enforceable lien against the real estate. The time for harvesting and delivering the emblements, as in the will provided, not having arrived at her death, there was nothing to go to her legal representatives.

The court did not err in sustaining the demurrer to the complaint.

Judgment affirmed, with costs.

Filed June 6, 1889.