NASH ET AL. *v*. THOMAS ET AL.

[No. 18,352. Filed February 6, 1953.]

*Lee M. Bowers* and *Arthur J. Palmer* of *Bowers, Feightner & Palmer,* of Huntington, and *John Edris* of *Gordon, Edris & Thompson,* of Bluffton, for appellant.

*C. W. H. Bangs* and *J. Edward Roush* of *Bangs & Roush,* of Huntington, and *George C. Davis,* of Bluffton, for appellee.

ROYSE, C. J.—Appellee Thomas brought this action for the alleged wrongful conversion of a one-half interest in a wheat crop grown on appellants' farm after appellees had voluntarily cancelled and surrendered possession of said farm after serving one year of a five-year lease.

Appellee Thomas' complaint in one paragraph averred he was the owner of an undivided one-half interest in approximately 1,490½ bushels of wheat; that appellants wrongfully appropriated and converted to their own use and sold said wheat to appellee Roanoke Elevator Company; that appellee Thomas notified said Elevator Company of his ownership of said wheat; that said Company purchased said wheat with full knowledge of his rights and it refused his demand for payment for said wheat. The complaint concluded with prayer for judgment of $1,500.00.

Appellants answered this complaint by an answer in two paragraphs. The first was an answer of admission and denial under the rules. The second was, in part, as follows:

"1. That on or about the 31st day of August, 1944, plaintiff and these answering defendants entered into a farm lease agreement by the terms of which the plaintiff became a tenant on these answering defendants' farm for a term of five years, commencing March 1, 1945, and terminating February 28, 1950.

"2. That under the terms of said lease plaintiff agreed to farm said real estate on a crop share basis, one-half of all crops to be delivered to these answering defendants as rent for said premises.

"3. That on March 12, 1946, said plaintiff, desiring to abandon said lease and discontinue farming said real estate thereunder, did, in consideration of the premises and agreement of these answering defendants to release said plaintiff from all liability under said contract of tenancy, execute and deliver to these answering defendants a written release by the terms of which plaintiff released these answering defendants from any and all liability under and by virtue of the provisions of said lease and which said written release was in the words and figures following, to-wit:

" 'March 6, 1946

In consideration of my release from all further and future liability on the attached lease, I hereby release Edgar L. Nash and Rose A. Nash from all liability under the provisions of the annexed lease.

Brice Thomas.' "

It concluded with a prayer that appellee Thomas take nothing and for a judgment for their costs.

Appellee Thomas, in reply to this paragraph of answer, admitted the allegations of rhetorical paragraphs one and two, and denied the allegations of the third paragraph.

Appellee Roanoke Elevator Company filed an answer in two paragraphs. The first, of admission and denial under the rules. By the second it admitted the delivery

of 1,340½ bushels of wheat of the value of $2,449.49 to its elevator; that it was notified by appellee Thomas that he was the owner of said wheat and by appellants that they were the owners of said wheat; that said appellee had paid to the clerk of the Huntington Circuit Court the sum of $2,449.49 for the use of the parties entitled to same and disclaiming any interest in the wheat or the controversy of the parties. (Hereinafter the term "appellee" shall refer to Bryce Thomas).

This cause was originally tried in the Huntington Circuit Court where there was a verdict for appellee. The court sustained appellants' motion for a new trial and the present action was venued to the Wells Circuit Court. Trial to a jury resulted in a verdict in favor of appellee Thomas for $1,500. Judgment accordingly. The error relied on here is the overruling of appellants' motion for a new trial. This motion contains twenty-two specifications. In view of the conclusion we have reached it is only necessary that we consider the last specification—that the court erred in refusing to direct a verdict for appellants and against appellee Thomas at the close of all the evidence.

There is little dispute as to the facts necessary to a determination of the question presented here. Appellants owned a farm of 270 acres in Huntington County. It was operated as a dairy farm. Appellee was a tenant of this farm from 1938 to 1941. In the late summer of 1944 appellant Edgar Nash called on appellee and discussed generally with him the subject of appellee again becoming a tenant on this farm. They discussed a fifty-fifty basis. Subsequently, on the 31st day of August, 1944 the parties entered into a written lease for the period beginning March 1, 1945 and ending March 1, 1950. We do not deem it necessary to set out

the provisions of the lease agreement. The lease was acknowledged before a notary public.

Before taking possession of the farm on March 1, 1945 appellee sowed about fifty acres of wheat which was harvested and sold in November, 1945. The proceeds of this sale were divided between the parties. Prior to March 1, 1945 appellant agreed to leave his chickens on the farm and it was agreed they would receive fifty-fifty of the proceeds from the chickens and eggs. All of the parties agreed this was the only oral change made in the written agreement between them. Appellee testified that from March 1, 1945 to March 1, 1946 everything that was bought and sold on the farm was divided fifty-fifty on a monthly basis as usual under a livestock contract. In the early fall of 1945 appellee prepared the ground and sowed about 42 acres of wheat. In November, 1945, appellee purchased a farm. He then went to appellants and asked them if they would relieve him from his contract. They agreed to terminate the lease as of March 1, 1946. The parties agreed to have a public sale of all livestock and farm produce on February 14, 1946. On or about March 6, 1946 they made final settlement and each of the parties signed a release of all liabilities under the contract. (This release hereinbefore set out in statement of pleadings.)  In the release signed by appellee there was no reservation of growing crops. All of the parties agree there was nothing said about the growing wheat crop during the negotiations for the cancellation of the lease agreement or at the time the mutual releases were made. In July, 1946 appellee sent his man to appellants' farm to combine the wheat. Appellants refused and said when appellee signed the release he had no further rights in the wheat.

Appellants contend that it is the law in Indiana that where a tenant under a five-year lease voluntarily terminates the tendency and abandons or surrenders possession of the real estate, which he is farming on a share crop basis, at the end of one year of the tenancy, without any reservation of a growing wheat crop, either express or implied, the tenant's rights in said growing wheat crop are terminated and said crop becomes the property of said landlords.

Appellee contends the written contract between the parties did not contain all of the essential terms of the contract. He asserts it made no provision that appellants were to receive anything from the sale of grain, milk, other farm products, milk subsidy and farm conservation. He further contends he entered the farm under the terms of the oral contract, and not under the terms of the written contract. Therefore he says, because an oral agreement for a five-year lease was invalid under the statute of frauds the contract of the parties was for a year to year lease. For the reasons hereinafter stated, we cannot agree with this contention.

It is an elemental principle of the law of contracts that when the agreement of parties is reduced to writing all prior negotiations between the parties are merged into the written agreement. It is undisputed that the parties entered into and executed a written lease. The appellee testified, in substance, that the discussion about the written contract not actually expressing the agreement between the parties was caused by the failure of the party who wrote the contract to say how the proceeds from the sale of crops was to be divided. Certainly it cannot be seriously contended that the mistake of the scrivener in not specifically setting out the provision for a divi-

sion of the proceeds from the sale of grain invalidated the written agreement of the parties hereto. It may well be, as appellee testified, that neither of the parties examined the written lease after they signed it until this dispute arose. Nevertheless the record indicates they both construed it to mean each would be entitled to fifty percent of the proceeds from the operation of the farm.

We next proceed to a determination of the question whether, under the terms of the lease and the written cancellation thereof, appellee was entitled to one-half of the proceeds from the sale of the wheat involved in this action.

Under the title "Landlord and Tenant", 51 C. J. S. 1040, §349-d, it is stated:

"A tenant is entitled to emblements where a term of uncertain duration is terminated by an act of God, the operation of the law, or by act of the landlord without fault of the tenant.

"However, in the absence of a provision in the lease to the contrary, where the estate is of such a nature that it may be terminated by some act of the tenant and where he does that act, he is not entitled to the crops growing on the premises when the estate is terminated. *Thus, where a tenant before the expiration of his term surrenders to the landlord,* or through some default forfeits his lease and the landlord reenters, the latter is entitled to the growing crops under the land and no right or title therein remains in the tenant." (Our emphasis.)

Under the title "Crops" in 15 Am. Jur., 215, §23, it is stated:

"A tenant under a lease which provides a definite period of tenure is not, according to the general rule of the common law, entitled to crops which do not mature until after the termination of the lease, because, if it is certain at the time

when he sows how long the tenancy will continue and it is plain that before it ceases he cannot reap that which he sows, then it is his own folly if he sows."

The only case in this state which has been called to our attention bearing on this matter is the case of *Miller, Administrator* v. *Wohlford et al.* (1889), 119 Ind. 305, 21 N. E. 894. There the appellant's deceased had been willed by her husband for her natural life one-third of all the grain which should be raised on certain farm property. The property was devised to the testator's children and grandchildren, subject to the right of the widow as above set out. Appellant's deceased died in May, 1887, after a large crop had been sowed. This crop was harvested after the death of appellant's decedent. Appellant sought to obtain the share of his decedent. In affirming the judgment of the trial court which found against appellant, the Supreme Court, at pages 308 to 310, reviewed exhaustively the law in actions to recover the value of emblements. The opinion states the three essential elements necessary for such recovery (set out in the authority quoted above). While in that case the court held there was no tenancy it does support the principle upon which appellants herein rely.

The case of *Emma O'Leary, Administratrix* v. *Alexander Harris* (1916), 89 N. J. L. 671, 99 A. 774, was in many respects analogous to the facts herein. This is particularly true as to the release therein. In referring to that release, the New Jersey Court said:

"But a reference to the writing alluded to shows nothing more than that the appellant paid to the respondent a certain sum of money which was to be in full satisfaction of what was owing on the lease and for the cancellation of the lease for the remainder of the term after March 25th, 1915. We

think that so important a matter as a reservation of a right by the appellant to harvest twenty-nine acres of grain, if it was intended that that right should be reserved, notwithstanding the cancellation of the lease and surrender of the premises, would most likely have been mentioned in the agreement."

It is clear to us from the record herein that appellee cancelled the lease herein. It makes no difference that appellants acquiesced in this. When he released appellants from all obligations under the lease he made no reservation of the growing crops. Therefore they became the property of appellants. The trial court erred in not directing a verdict in their favor at the conclusion of all the evidence.

Judgment reversed, with instructions for further proceedings in accord with the views expressed herein.

Crumpacker, P. J., not participating.

NOTE.—Reported in 110 N. E. 2d 355.