DORWEILER ET AL. *v.* SINKS ET AL.

[No. 18,921. Filed March 7, 1958. Rehearing dismissed April 18, 1958. Transfer denied June 10, 1958.]

534

*George F. Stevens, Stevens and Wampler,* of Plymouth, *Floyd O. Jellison* and *Jellison, Orr & Minczeski,* of South Bend, for appellants.

*Albert B. Chipman* and *Kizer & Neu,* both of Plymouth, for appellees.

ROYSE, P. J.—This action involves a family dispute between the parties growing out of financial transactions between the appellant Josephine Dorweiler and her daughter, the appellee Gertrude R. Sinks. Hereinafter said appellant will be referred to as Josephine

and said appellee as Gertrude. The appellant LuMilda Dorweiler, a sister of Gertrude, will be referred to as LuMilda.

Josephine instituted this action by filing her complaint against Gertrude. The complaint was in three paragraphs, also an amended fourth paragraph of complaint and a supplemental paragraph of complaint. Gertrude filed answer to each of said paragraphs of complaint. She also filed a cross-complaint in two paragraphs against Josephine and LuMilda. Answers to the cross-complaint were filed by Josephine and LuMilda. Each also filed an additional paragraph of answer seeking to quiet their title against the claim of title by Gertrude and her husband to certain real estate. Replies were filed to these paragraphs by Gertrude.

Trial to the court which, upon proper request, on February 29, 1956, entered its special findings of fact and stated its conclusions of law thereon. On May 28, 1956 it entered an additional finding of fact No. 37 and stated an additional conclusion of law thereon. Thereafter, on the same day it overruled appellants' motion for a new trial.

The special findings of fact take up more than twenty-one printed pages in appellants' brief. They may be summarized as follows:

Josephine and John A. Dorweiler were the parents of Gertrude and LuMilda. In 1927 he became mentally ill and was confined in the Logansport State Hospital until his death in 1942. After he was committed to the hospital the family lost all of their property and the mother went through bankruptcy.

Under a disability policy, Josephine as guardian received $200.00 per month from 1927 until 1942. At the close of the guardianship she retained and used these funds. Both daughters signed releases, though

no money was paid to either. On the death of the father, Josephine received "$1000.00 in a lump sum as beneficiary" from each of two insurance companies. Also, she received on another policy $12,000.00 payable in monthly installments of $200.00.

In 1934, Josephine had accumulated from guardianship funds and from earnings the sum of $2,000.00 which was paid toward the purchase of a farm in Marshall County, Indiana. Title to this farm was taken in the name of her husband. In 1939 this farm was sold and the proceeds applied to the purchase of the Holland farm. Title to this farm was taken in the name of Josephine. From the time of this purchase, Gertrude and her mother occupied this farm and participated in the management thereof. Gertrude did the largest part of the management and operation of said farm, except for two short intervals, until about 1946.

From 1938 to 1942, improvements costing from ten to fifteen thousand dollars were made and a mortgage debt of $6,000 was paid off from the proceeds of said farm and from insurance payments. During several years from 1938 to 1949, turkeys were raised in large numbers upon the farm. Gertrude initiated this project and, at least in the beginning, took the proceeds from the sale of said turkeys.

In 1940, Gertrude negotiated the purchase of the Thayer farm for $5,500.00. Gertrude and Josephine each paid part of the purchase price and title was taken in Gertrude's name. From 1941 to 1952 this farm was operated in much the same way as the Holland farm. Its management was handled for the most part by Gertrude.

In 1946, Gertrude began the construction of a 12-unit motel on U. S. Highway No. 6 on the Thayer farm, and a garage known as the Shell Station adjacent to said motel.

From the farm operations and insurance money there was placed in a bank safety deposit box cash and bonds in the sum of $25,000.00, to which box Josephine and Gertrude each had a key and access until 1952.

During the construction of the motel, Gertrude needed money and Josephine turned over to her all said cash and bonds. Except for short stays, LuMilda did not live with Josephine or assist in the management or work until 1952. On July 1, 1946, Gertrude executed her promissory note to Josephine for $25,-000.00, payable on demand, with interest at 5% per annum.

During the latter part of 1946, Gertrude purchased the Baxley restaurant and Standard Oil Station for $33,000.00, and gave a mortgage on the Thayer farm to secure funds for this purchase.

Harry Rosebush was a creditor of Gertrude and was pressing her for payment of his claim, and threatened to file involuntary bankruptcy proceedings against her. On January 6, 1947, Gertrude and Josephine went to the office of W. O. Osborn, an attorney at Culver, Indiana, for advice. At that time and place, Gertrude executed a warranty deed conveying certain real estate to Josephine for a stated consideration of $1.00 and other valuable consideration. By the terms of said deed, Josephine assumed and agreed to pay off and discharge a certain mortgage executed by Gertrude to the Farmers State Bank of LaPaz, Indiana, and also the unpaid balance of $33,000.00 on a mortgage executed by Gertrude at the State Exchange Bank of Culver. On the same day the following contract was entered into between Gertrude as the party of the first part and Josephine as the party of the second part. It provides as follows:

"WITNESSETH:

That said first party is now indebted to said second party in the principal sum of Thirty Thousand Dollars ($30,000.00) as evidenced by a note of Twenty-five Thousand Dollars ($25,000.00) in addition to which she is indebted to said second party in the additional principal sum of Five Thousand Dollars ($5,000.00) for money advanced, making a total of Thirty Thousand Dollars ($30,000.00) ; that said money was loaned for the purpose of improving certain real estate owned by said first party, located in Marshall County, Indiana; that it is the desire of said parties to make a complete settlement covering any and all indebtedness which said first party might owe to said second party, and with this in mind the following agreement has this date been made between the parties:

1. It is agreed that said first party will convey all the real estate which she owns, located in Marshall County, Indiana, to said second party for the following consideration:

a. It is agreed that said Thirty Thousand Dollars ($30,000.00) indebtedness which said first party owes said second party is to be cancelled.

b. It is agreed that said second party assumes and agrees to pay off and discharge the unpaid balance of Thirty-three Thousand Dollars ($33,000.00) of a certain mortgage given to the State Exchange Bank of Culver, Indiana, which was duly and legally recorded in Mortgage Record 148, page 500, of the records of Marshall County, Indiana.

c. It is agreed that said second party assumes and agrees to pay off and discharge the unpaid balance of Four Thousand Dollars ($4,000.00) given to the Farmers State Bank, LaPaz, Indiana, and which was duly and legally recorded in Mortgage Record 149, page 29, of the records of Marshall County, Indiana.

d. It is agreed that said second party assumes and agrees to pay off and discharge the unpaid balance of Two Thousand Seven Hundred Sixty-four and 21/100 Dollars ($2,764.21) due State Exchange Finance Company, Culver, Indiana, for three year fire insurance policies, covering the property which said first party is to convey

to said second party concurrently with the execution of this agreement, at which time all of said policies are to be assigned by said first party to said second party.

e. It is agreed that said second party assumes all taxes against said property.

It is especially understood that all of the real estate to be conveyed by said first party to said second party is free and clear of any and all encumbrances save and except said two mortgages and current taxes.

It is especially understood that this sale and transfer is to be consummated concurrently with the execution of this agreement."

On the same day, Josephine executed the following will:

### "Item I.

"I first order and direct that my just debts, including funeral expenses and expenses of last sickness be fully paid and satisfied.

### "Item II.

"I hereby will and bequeath unto my daughter, LuMilda Dorweiler the sum of Fifteen Thousand Dollars ($15,000.00).

### "Item III.

"I hereby will and devise unto my daughter Gertrude Dorweiler Rosebush, all of the real estate which she has conveyed to me of even date herewith, subject to the payment of any and all mortgages against said real estate.

### "Item IV.

"I hereby will, devise and bequeath unto my two daughters, Gertrude Dorweiler Rosebush and LuMilda Dorweiler, the entire residue of all of my property of every kind and description, share and share alike, to each the one-half ($\frac{1}{2}$) part.

### "Item V.

"I hereby nominate and appoint my daughter, Gertrude Dorweiler Rosebush, as Executrix of this my Last Will and Testament.

"Item VI.

"I hereby revoke any and all other wills by me at any time heretofore made."

That said deed and contract did not constitute the entire transaction between the parties in all of its terms but that there were portions of said transaction not incorporated in said deed and contract.

That said Osborn was also an officer of the State Exchange Bank of Culver and the State Exchange Finance Company of Culver. Said bank and finance company continued to hold Gertrude primarily liable on said mortgage in the sum of $33,000.00 and for insurance premiums in the amount of $2,764.21. Said $25,000.00 note given Josephine by Gertrude remained in the lock box and was never marked "paid."

That after the execution and recording of said deed, Gertrude remained in possession of said real estate and operated the motel thereon continuously thereafter until August 15, 1952. She paid the taxes thereon until 1952, reported the income therefrom for income tax purposes, and kept improvements thereon insured.

In the year 1947 the Shell Station was sold for $13,000.00. The Baxley restaurant and Standard Oil Station were sold for $42,934.00. Deeds for each of these properties were signed by Gertrude and Josephine. From the proceeds, Gertrude paid the State Exchange Bank the $33,000.00 mortgage debt.

On January 6, 1947 the value of the property conveyed by Gertrude to Josephine was in excess of $100,000.00. On said date, Gertrude owed her mother $30,000.00.

After January 6, 1947, Gertrude, in her income tax returns, reported the sales of the above property and the income from such property before sales, and the income from the motel until August, 1952. Josephine did not report the sale of these properties and did not

report any income from the property covered by said deed until 1953.

On September 13, 1952, Josephine conveyed certain real estate to LuMilda and on said date LuMilda knew her mother was holding such real estate as security only and there was no consideration for the purported conveyance.

Josephine, at Gertrude's request, conveyed to Gertrude the real estate on U. S. 31 on which the bowling alley and motel were located.

On August 15, 1950, Josephine was the owner of the Holland farm which was unencumbered. Gertrude also owned real estate in Marshall County on which she was then erecting a bowling alley and motel. Gertrude was in need of funds and at her request Josephine borrowed $8,256.64 from the Farmers State Bank at LaPaz, and placed a mortgage upon her real estate. All of the proceeds of said loan were turned over to Gertrude who promised to make the payment due on said mortgage August 15, 1952, and has since failed to make such payments. Josephine has had to pay $3,487.50 on said mortgage and is still obligated to pay $4,000.00 with interest. Gertrude has failed and refused without just cause to make said payments as agreed.

That the rental value of said motel is $2,000.00 per year. Josephine has wrongfully withheld the possession of said motel from Gertrude since August 15, 1952.

"31. That during the litigation the said Josephine Dorweiler, LuMilda Dorweiler and Gertrude Sinks, executed a right-of-way grant to the State Highway Department of Indiana, covering real estate involved in this litigation and received a total of Thirty-six Thousand Three Hundred and Forty Dollars ($36,340.00), which was paid to the different parties pursuant to a stipulation between the parties, which omitting caption reads as follows:

It is stipulated and agreed by and between the Parties signing this Stipulation, that—

WHEREAS, The State Highway Department of Indiana is seeking grants of land to improve State Highway No. 31 and State Highway 6, which covers land in controversy in the above entitled matter, and which necessitates the signing of grants by all the Parties hereto;

AND, WHEREAS, an offer has been made by the State Highway Department of Indiana, which in its entirety is acceptable to the Parties hereto;

AND, WHEREAS, the grant will provide that payments will be made to the Parties hereto in specified amounts;

AND, WHEREAS, it is the wish and desire of the Parties to accept such offer of compromise, and that one grant will be signed by all Parties and the State Highway Department of Indiana, and the checks will be made out and delivered to the respective Parties, as follows: Josephine Dorweiler and the State Exchange Bank, $6,500.00; LuMilda Dorweiler and the Farmers State Bank, $6,500.00; and Gertrude Sinks and the State Exchange Bank, $23,340.00.

AND, WHEREAS, it is the wish and desire of all Parties that the signing of said grant and the accepting of said money shall not change, modify, improve or diminish the position of the Parties, or any of them, in this litigation;

NOW, THEREFORE, it is hereby stipulated and agreed by and between the Parties hereto that by the signing of the Grant and the acceptance of the money from the State Highway Department of Indiana, for the right-of-way on State Roads No. 31 and No. 6, the rights of the undersigned, Josephine Dorweiler, LuMilda Dorweiler and Gertrude Sinks, or either of them, in the pending litigation shall be neither improved nor diminished, and the Court trying the case shall be permitted and in fact requested to consider funds so received as a part of the issues and accounting between the different Parties. And if the Court trying the case decides that Josephine Dorweiler and LuMilda Dorweiler are the owners of the property covered by their portion of the grant,

the funds so received shall be theirs, and if the Court trying the case decides title is held by Josephine Dorweiler and LuMilda Dorweiler, or either of them, in whole or in part, only as security for a debt due them, or either of them, from Gertrude Sinks, then the funds so received shall be considered, either in whole or in part as being applied upon said indebtedness, as the Court hearing the case shall determine.

It is further stipulated that at this time the record does not show any Judge having jurisdiction of this cause, but that this stipulation shall be filed in this cause as soon as a Judge is selected and qualifies."

That the warranty deed of January 6, 1947 was in truth and in fact and in law a mortgage to secure the indebtedness of Gertrude to Josephine; that Gertrude is the owner in fee simple and entitled to the possession of the real estate described in her cross-complaint; that any claim of Josephine and/or LuMilda is unfounded and without legal right, except as to the rights of Josephine as a mortgagee.

That Gertrude owes Josephine $2,700.00 arising out of the payment of the mortgage on the Fritter property from the State Highway funds. She is also indebted to Josephine in the sum of $44,575.00 and the payment of said sum is secured by a mortgage on the real estate described in her cross-complaint;

That Gertrude is entitled to $7,000.00 from Josephine for the wrongful withholding of the possession of the motel, and said sum shall be credited against any amounts found due from her to Josephine in these findings of fact.

Conclusions of law were stated as follows:

"1. That the law is with the plaintiff, Josephine Dorweiler, on her first paragraph of complaint.

2. That the law is with the defendant, Gertrude Rosebush Sinks, on the 2nd, 3rd and 4th paragraphs of plaintiff's complaint; on her cross-complaint and on her supplemental cross-complaint.

3. That the deed described in Finding of Fact No. 19, was and is a mortgage to secure the payment of indebtedness.

4. That neither party is entitled to an accounting from the other."

Thereafter, on March 28, 1956, the court made the following finding:

"The Court having been duly requested to make and file Special Finding of Facts and state its Conclusions of Law, and having made and filed the same on February 29, 1956, now, prior to the ruling on the plaintiff's Motion for a new trial, makes and files its Finding of Facts No. 37, which reads as follows:

37. Gertrude Sinks is entitled to a credit of $13,000.00 by reason of the receipt of that amount from the State Highway Department by Josephine Dorweiler and LuMilda Dorweiler, and that a recapitulation of the amounts owing each of the parties, Josephine and Gertrude Sinks is as follows:

Gertrude owes Josephine .........
Holland farm loan and interest ...$ 7,487.50
Fritter mortgage debt paid out of
   Highway funds .............. 2,700.00
Mortgage debt ................. 44,575.00

    Total ....................$54,762.50

Gertrude is entitled to the following credits:

Funds covered by
   stipulation ........$13,000.00

Damages for wrongfully
   withholding motel .. 7,000.00

                            20,000.00

Balance owing Josephine ........ $34,762.00

IN RE: Dorweiler Appeal
Dated May 28, 1956.

        F. E. Rakestraw

        Special Judge, Marshall Circuit Court"

And on said date the Court also entered Conclusion of Law No. 5, and omitting caption reads as follows:

"CONCLUSION OF LAW NUMBER FIVE

"That on the first paragraph of plaintiff's complaint, the plaintiff, Josephine Dorweiler, should recover of and from the defendant, Gertrude Rosebush Sinks, the sum of Seven Thousand and Four Hundred Eighty-Seven Dollars and Fifty Cents ($7,487.50). That on defendant's supplemental cross-complaint, the defendant recovered from the plaintiff, Josephine Dorweiler, the sum of Thirty-four Thousand Two Hundred Seventy-five Dollars ($34,275.00), which sum is secured by a mortgage upon the real estate described in the cross-complaint of the defendant, Gertrude Rosebush Sinks. That the said Gertrude Rosebush Sinks, should be granted 120 days from this date within which to pay the plaintiff, Josephine Dorweiler, the said sum of Thirty-four Thousand Two Hundred Seventy-Five Dollars ($34,275.00) and if the defendant, Gertrude Rosebush Sinks, fails to pay said sum to the Clerk of this Court within such period of time, then the plaintiff shall have the right to commence foreclosure proceedings and proceed as in foreclosure as provided by law. That the sum of Seven Thousand ($7,000.00) Dollars due the defendant from the plaintiff should be set off against the sum of Seven Thousand Four Hundred Eighty-seven Dollars and Fifty Cents ($7,487.50) due said plaintiff from said defendant and said plaintiff should be entitled to a judgment against the defendant after said set-off in the sum of Four Hundred Eighty-seven Dollars and Fifty Cents ($487.50)."

The assignment of errors is as follows:

1. That the Court erred in overruling the Appellants' Separate and several motion for a new trial.

2. The Court erred in entering and filing its Special Findings of Fact and Conclusions of Law, separately and severally.

3. The Court erred in failing and refusing to modify the Special Findings of Fact as separately and severally prayed for in a written motion filed March 30, 1956.

4. The Court erred in entering Finding of Fact Number 37, which Finding of Fact was entered after the filing of the motion for new trial and on the same day the motion for new trial was overruled. ·

5. The Court erred in entering its Conclusion of Law Number 5, which Conclusion of Law was entered after the motion for new trial was filed and on the same day said motion for new trial was overruled.

6. The Court erred in entering its Conclusions of Law Numbers 1 to 5 inclusive, which said Conclusions were entered at different times, and entering a Decree thereon dated and entered as of May 28, 1956.

The specifications in the motion for a new trial, except as noted herein, are as follows:

1. The decision of the Court is not sustained by sufficient evidence.

2. The decision of the Court is contrary to law.

3. Error of law occurring at the trial in this: (This specification is divided into ten subdivisions, A to J, and relates to alleged error in the admission of certain evidence.)

4. Error in the assessment of the amount of recovery, it being too small. Even upon the assumption that the Court's legal conclusion is correct the amount of recovery awarded in favor of Josephine Dorweiler is too small under the undisputed evidence in the case.

5. Error of law occurring at the trial and excepted to by this plaintiff, Josephine Dorweiler, and the cross-complainant, Josephine Dorweiler, in this, that an accounting was asked for and the evidence shows the need and necessity for an accounting but one was not granted by this Court.

6. Error of law committed by the Court in failing and refusing to modify the special findings of fact as separately and severally prayed for in written motion filed March 30, 1956.

Before considering any of the various contentions of appellants, we take up the contentions of appellees

that appellants have not properly presented a question to this court.

First they say: assignment of error No. 2, "The court erred in entering its special findings of fact and conclusions of law separately and severally," presents no question because where, as here, it is contended the findings were not sustained by sufficient evidence, such question must be raised by a motion for a new trial in the trial court, and an assignment of error in this court that the court erred in overruling the motion for a new trial.

Rule 2-6, Rules of the Supreme Court, provides, in part, as follows:

> "There shall be attached to the front of the transcript, immediately following the index, a specific assignment of the errors relied upon by the appellant *in which each specification of error shall be complete and separately numbered. . . ."* (Our emphasis.)

We agree with appellees that the only way the sufficiency of the evidence to sustain the special finding of facts can be questioned is by a specification in the motion for a new trial that the decision or finding is not sustained by sufficient evidence, and an assignment of error in this court that the trial court erred in overruling the motion for a new trial. Flanagan, Wiltrout and Hamilton, Indiana Trial and Appellate Practice, §1732, Com. 7, p. 354. Furthermore, this specification does not comply with the provision of Rule 2-6, *supra,* that "each specification of error shall be complete and separately numbered."

However, the first specification of appellants' motion for a new trial, as heretofore indicated, is "The decision of the court is not sustained by sufficient evidence." The overruling of that motion has been properly assigned as error in this court.

This is sufficient to present the question of the sufficiency of the evidence to sustain the findings of fact.

Appellant's sixth assigned error that "The court erred in its conclusions of law numbers 1 to 5, inclusive, etc." is a joint assignment as to the conclusions of law. *Property Owners, Inc. et al. v. City of Anderson et al.* (1952), 231 Ind. 78, 83, 107 N. E. 2d 3; Flanagan, Wiltrout and Hamilton, Indiana Trial and Appellate Practice, §2396 Pocket Part, p. 66.

Finally, we do not agree with appellants that the second specification of their motion for a new trial that the "decision of the court is contrary to law" presents a question as to the conclusions of law. The provision of Rule 2-6 upon which they rely is as follows:

"If, in the trial court, a motion for a new trial is filed, each error relied upon, however and whenever arising up to the time of the filing of said motion, *may be separately specified herein as a ground therefor*, and an assignment of error to the effect that the trial court erred in overruling said motion shall be sufficient to raise said asserted error on appeal. Errors which now must be assigned independently may still be so assigned if desired." (Our emphasis.)

An entirely different question would have been before us if appellants' motion for a new trial contained a separate specification that the trial court erred in "each" of its conclusions of law Numbers 1 to 5, or that it erred in each of said conclusions respectively, or by separate specification assert error as to each conclusion of law. In our opinion the foregoing rule gives the appellant the right to assert as grounds for a new trial errors which prior to the adoption of the rule would have to be assigned independently. However, in doing this such specification must be in

the form required to present a question as an independent assignment of error.

Appellees next say that assigned error No. 3 that "The court erred in failing and refusing to modify the special findings of fact as separately and severally prayed for in a written motion filed March 30, 1936," presents no question. In their answer brief appellants frankly say:

"We recognize the rule that a motion to modify, strike out or change a Special Finding of Facts and Conclusions of Law is not a proper method of raising the question as to the sufficiency of the Finding but the question should be raised by a motion for a new trial."

Assigned error No. 3 does not raise a question.

As heretofore set out, assigned errors Nos. 4 and 5 assert the court erred in entering its special finding of fact No. 37 and conclusion of law No. 5 after their motion for a new trial had been filed. In this case judgment had not been entered when finding No. 37 and conclusion of law No. 5 were made and entered. Until final judgment the case was *in fieri* and the court could change its decision with or without cause. *City of East Chicago* v. *State ex rel. Pitzer et al.* (1949), 227 Ind. 241, 247, 84 N. E. 2d 588, and authorities there cited. Rule 1-8 of the Supreme Court now gives the trial court the authority to do this even after judgment has been entered.

Finally appellees contend no question has been saved as to the admission of evidence because appellants' motion for a new trial under specifications 3-A and B and D to J, both inclusive, does not set out the objections or the answers to the questions in the motion for a new trial; that specification 3-C relating to an exhibit received in evidence does not present a question because the exhibit is not set

forth in full or in substance in the motion for a new trial, and it is not shown who offered the exhibit.

In their reply brief, in answer to appellees' contention that specifications 3-A and 3-B, and 3-D to 3-J do not present a question, appellants admit:

"It may well be that Specifications 3-A and 3-B and 3-D to 3-J, inclusive, of our motion for a new trial, are not sufficiently set out. The Specifications do show the names of the Witness, by whom the witness was called, the examining party, the question was asked, and by direct inference it is shown that the Court permitted the witness to answer in each instance. However, the Answer given, and the Objections stated are not set out completely in the Motion for a new Trial. If this is necessary we have failed to include that, and have not, therefore, properly presented these questions in these particular Specifications."

That it was necessary is so well established that it is unnecessary to cite authority in support thereof.

As to specification 3-C the motion for a new trial does not set out in full or in substance the exhibit referred to in said specification. Therefore, no question is presented. Flanagan, Wiltrout and Hamilton, §1812, Com. 8, p. 388. *Hunt* v. *State* (1956), 235 Ind. 276, 133 N. E. 2d 48.

While as we have hereinbefore stated the specification in appellants' motion for a new trial that "the decision of the court is contrary to law" does not present a question as to the conclusions of law, insofar as the findings relate to appellants' second, third and fourth paragraphs of complaint are concerned it does present a question as to whether the evidence in the record leads inescapably to the conclusion that the findings and judgment denied appellants relief to which they were entitled. We will therefore consider appellants' argument as to the third conclusion of law as being intended to challenge the

findings on this question. *Muncie Electric Light Company* v. *Joliff* (1915), 59 Ind. App. 349, 359, 109 N. E. 433.

Appellants contend that in this state when a deed absolute on its face is based upon or accompanied by a written contract, their rights must be controlled thereby, and in the absence of fraud or mistake all evidence of contemporaneous agreements on the same subject varying, modifying or contradicting the written agreements, is inadmissible, and therefore the question becomes a question of law for the court. They cite in support thereof: *Guckenberger et al.* v. *Shank et al.* (1941), 110 Ind. App. 442, 37 N. E. 2d 708,[1] and *Nash et al.* v. *Thomas et al.* (1953), 123 Ind. App. 256, 110 N. E. 2d 355.[2] Neither of these cases support the contention made here by appellants.

They rely heavily on the case of *Rooker et al.* v. *Fidelity Trust Company* (1916), 185 Ind. 172, 109 N. E. 766, and quote from page 184 as follows:

"There can be no doubt that the general rule which precludes the admission of parol or extrinsic evidence to vary or contradict the terms of a written instrument is subject to the exception that a deed absolute on its face may, in equity, be shown by parol evidence to have been intended to have the effect of a mortgage merely. This exception has found frequent expression in the decisions of this and the Appellate Court, and its existence as an established rule in Indiana is conceded by appellants. It is their contention, however, that it has no application where, as in this

---

1. The Guckenberger case, *supra*, was an action for ejectment and an attempt was made to show by parol what the true consideration was for the execution of the deed, even though the deed expressly provided when the grantees were to have possession of the land in controversy. The court then correctly held parol testimony regarding actual consideration was not admissible.

2. The Nash case, *supra*, was an action against a landlord and Elevator for conversion of one-half interest in a wheat crop. We held where a tenant cancelled a lease and did not specifically reserve the right to the wheat after it matured, he was not entitled to such interest after the cancellation.

case, the deed or other instrument of conveyance is but one element in a transaction which has been reduced to writing in its entirety and is evidenced by a memorandum embodying all of its terms. This position is well taken. As recently stated by this court, where 'there is a formal written contract *which appears to be complete within itself,* it will be presumed to be the repository of the final intentions of the parties in regard to the subject matter of the agreement. Oral declarations relative thereto will be disregarded and the rights of the parties determined as they appear from the written instrument.' " (Our emphasis.)

The facts in that case are clearly distinguishable from the facts in this case. The contract in that case shows an entirely different situation than we have here. There the appellant who was the grantor was not indebted to appellee at the time the deed and contract were executed. They were made to induce appellee to provide money due by appellants to others on a building project and to provide funds to complete that project. The court then distinguished the difference between an absolute deed of trust and a deed of trust in the nature of a mortgage and then held the deed and contract it was considering was a deed of absolute trust.

In this case the deed and contract were not the only instruments involved in the transaction. There was also the will of Josephine and a deed signed in blank by Josephine.

In 36 Am. Jur., p. 762, §147, it is said:

"Evidence is relevant and of probative value on the issue of mortgage or no mortgage to the extent that it tends to prove that the conveyance in question was or was not to secure the performance of an obligation. It is manifest that the competency of particular evidence to prove that an instrument of conveyance is or is not a mortgage must depend in large measure on the circumstances of the case. Under this view, evidence relating to almost every conceivable state of facts legitimately illustrative

of a transaction of a mortgage or sale has been held competent, including such evidence as the comparative intelligence, condition, and relationship of the parties, and a variety of other circumstances. Frequently, although each of particular elements standing alone will not, of itself and without support, warrant an inference that a deed absolute in form was intended as a mortgage, the concurrence of two or more of them may accomplish that result."

Among the facts to be considered in determining whether a deed absolute in form is in fact a mortgage: Was the grantor at the time of the execution of the deed indebted to the grantee; inadequacy of consideration; preliminary negotiations between the parties; who was in possession of the property after the deed and contract were executed?

In *Calahan* v. *Dunker et al.* (1912), 51 Ind. App. 436 at pages 444, 445, 99 N. E. 1021, it is stated:

"A conveyance of land absolute on its face, without anything in its terms to indicate that it is other than an absolute conveyance, and without any accompanying written defeasance, contract of repurchase or other agreement, may, in equity, by means of extrinsic and parol evidence, be shown to be in fact a mortgage as between the original parties, and as against all who derive title from or under the grantee, who are not *bona fide* purchasers for value and without notice. *Matchett* v. *Knisley* (1901), 27 Ind. App. 664, 669, 62 N. E. 87; *Brown* v. *Follette* (1900), 155 Ind. 316, 321, 58 N. E. 197; *Turpie* v. *Lowe* (1888), 114 Ind. 37, 47, 15 N. E. 834.

"This suit is between the original parties to the transaction, and the rights of third parties are in no way involved. The form of the instrument is not controlling in determining the character of the transaction. If it was executed to secure a subsisting and unsatisfied debt, it will be held to be a mortgage. The test of a mortgage is found in the existence of the debt and the execution of an instrument to secure it. (Authorities.)

"In determining whether an instrument in the form of a deed is to be construed according to its literal import or as a mortgage, inadequacy of consideration is a fact tending to show it to be a mortgage."

In the case of *Kerfoot et al.* v. *Kessener et al.* (1949), 227 Ind. 58, 84 N. E. 2d 190, appellant executed a warranty deed to appellees at the same time appellees gave appellant the option to purchase said real estate for the net amount due by appellant to appellees. This contract provided, in part, as follows:

"Whereas said Parties of the First Part have this date conveyed said above described real estate to said Parties of the Second Part, in full satisfaction of all of said indebtedness, and not as security for a loan of the amount of said indebtedness;"

The Supreme Court reversed the trial court and held the deed a mortgage. The opinion by Emmert, J. is well-reasoned and well-supported by respectable authorities from this and many other jurisdictions. We quote some statements therefrom which we believe are pertinent to the question presented here:

"The form and names of the instruments are not of controlling effect for the law looks through form to substance and will give effect to the real and dominant intention of the parties when definitely ascertained. . . .

"The preliminary recitals of the contract may be of some value, but they are not contractual, and can not be permitted to control the express provisions of the contract which are contractual in nature. . . .

"Equity, in case of doubt, will construe a writing as a mortgage rather than a conditional sale. . . .

"The general rule is that 'if a conveyance is made as a security for money, in whatever form the conveyance is made, or whatever cover may be used to disguise the transaction and hide its real character from others, as between the parties and as to all persons who have notice that the property

is merely held as collateral security, it will be held and treated as a mortgage.' 41 C. J. 312, 313, §64. . . .

"The parties, by their acts subsequent to the conveyance, construed the transaction as a mortgage rather than option for purchase." pp. 78, 79, 80.

The evidence in this case takes up approximately 139 printed pages in appellants' brief. It would unduly lengthen this already too long opinion to attempt to set out a summarization of all that evidence. Therefore, with the exception hereinafter noted, we will state our view of the facts most favorable to appellees as established by the evidence.

For several years prior to August, 1952, Gertrude and Josephine conducted farming operations together. Gertrude, because of Josephine's health, did most of the work. Their funds were commingled, property was purchased with their joint funds, title was taken at different times in the name of each. Due to Gertrude's hard work and efficient management these farming operations were highly successful. With profits from the farm operations and money borrowed on mortgages, which mortgages were signed by Gertrude and Josephine, under Gertrude's direction there was built on the property involved here a bowling alley, restaurant and filling stations which were leased or run and managed by Gertrude. In the latter part of 1946 she was being pressed by some of her creditors, one of whom was threatening her with bankruptcy proceedings. This disturbed Josephine who, during her husband's illness, went through bankruptcy. After some consultation between themselves they decided to call on one W. O. Osborn, an attorney and banker at Culver, Indiana. His banks held some of the mortgages on their property. They met with him in his office and because the instruments, which were executed on

his advice at that meeting are the source of this litigation, we set out verbatim from the record certain testimony of Gertrude in reference thereto:

"Q. What did you tell him?

"A. We told him that Harry closes up the businesses. My mother was worried about throwing us into bankruptcy, which he threatened to do, and what could be done to protect her interests. She thought perhaps the best thing would be to put the property in her name and that would give her a chance after the mortgages was paid, that would give her a chance if something would happen, and Mr. Osborn said, 'Mrs. Dorweiler, Bankruptcy won't save you if Harry wants $5500.00. You will have to settle with Harry.' He said, 'It don't take three creditors to throw you into bankruptcy,' and he reached back and got his lawbooks and as he read through it, he said, 'It only takes one person.' He said, 'I will fix this contract for you to show that you have something for your property but,' he said, 'Gertrude will have to straighten out with Harry and pay any bills she owes or you will be out,' and he said, 'I will draw it up in order to protect Gertrude.' He said, 'You want her protected, don't you?' and she said, 'Yes, I want her protected. I want her to have all that is hers.' He said, 'I think you should have a will made, too, in case something should happen to you. After all, you are not young any more,' and he said, 'I will draw a will up along with this contract and sign a blank deed and in case something happens to you, I can turn all your property over to go to her and it won't have to wait to go through an estate.' And he went ahead and drew up the papers. He drew up a will at the same time. He put in the will — shall I tell you what was in the will?'

"Q. No, we will get to that.'

"A. I signed a deed and a contract and the will, she signed. He handed her the copy of the agreement and the deed and he handed the will and a copy of the contract to me.'

"Q. Now, that was some of the conversation that took place at the time that Plaintiff's Exhibit 1 that you have just looked at, being the deed, was signed?

"A. Yes, that's the deed.

"Q. And that conversation took place at the same time that Plaintiff's Exhibit 2 was signed?

"A. Yes, it was the same time.

"Q. I hand you what has been marked for identification as Defendant's Exhibit A, and ask you whose signature appears on that?

"A. That is my mother's signature.

"Q. Did your mother sign Defendant's Exhibit A at the same time and on the same date and at the same sitting in which Plaintiff's Exhibits 1 and 2 were signed?

"A. Yes, sir."

Neither Josephine nor Mr. Osborn contradicted this statement. Osborn kept in his possession the deed which Josephine signed in blank. Josephine received the deed and retained the note from Gertrude which was never marked paid. Gertrude was given the will and retained possession of it. At the time of the execution of these instruments Gertrude owed Josephine $30,000. The property she deeded to Josephine was worth approximately $100,000.

After the execution of the instruments there was no change in the relations of the parties for more than eight years. Their affairs were conducted with the same mutual confidence and respect. Gertrude managed the business of all of their property. She retained possession of the property deeded to her mother just as she had done before. She paid the real estate taxes on this property and the income taxes on the receipts from its operation until August, 1952. Several parcels of the real estate conveyed by Gertrude to Josephine were sold prior to August, 1952. Most of the proceeds were applied to the liquidation of mortgages on the property. In each instance the deeds were signed by both Gertrude and Josephine.

In August, 1952, LuMilda came to visit her mother. During her visit a dispute arose as to the manner in

which Gertrude was handling the affairs, as a result of which Gertrude was turned out and LuMilda took over. This litigation followed.

On the record herein we are of the opinion the findings of the trial court on appellants' second, third and fourth paragraphs were not contrary to law. We are of the opinion further the evidence in the record amply sustains the trial court's findings of fact.

The special findings of fact support the conclusions of law.

Judgment affirmed.

NOTE.—Reported in 148 N. E. 2d 570.
      Transfer denied in 151 N. E. 2d 142.