McCool et al. v. Ayres et al.

[No. 19,887. Filed September 25, 1963. Rehearing denied
October 22, 1963. Transfer denied April 21, 1964.]

*Paul Reed,* of Knox, for appellants.

*Clarence O. Davisson, Busby, Davisson, Cooper & Farr,* of Anderson, *Lester L. Wilson* and *John L. Richert,* both of Winamac, for appellees.

KELLEY, J.—The appellee administrator with the will annexed of the estate of John F. McCool, deceased, and the appellee, The Little Company of Mary Hospital and Home for the Chronically Ill, Inc., (hereinafter referred to as the Home), joined in a petition to sell certain therein described real estate, alleged to be an asset of the estate of said decedent, to "make funds" for the purpose of paying certain alleged debts, claims and expenses of the estate. Said petition was filed in the Pulaski Circuit Court and named the appellee, Martha Ayres, daughter of the decedent, the appellee, John Underwood, as Auditor of Pulaski County, Indiana, and the appellant, William S. McCool, son of the deceased, and said appellant's wife, Eva McCool, as defendants thereto. No question arises as to the due commencement of the action or the jurisdiction of the court over the parties.

The petition, in pertinent material substance, alleged that the appellee, Martha Ayres, and appellant, William S. McCool, are the sole and only heirs of decedent and the sole distributees of decedent's will; that Eva McCool is a claimant against the estate and that the State of Indiana is the holder of a school fund mortgage on the real estate sought to be sold; that the decedent was the owner in fee simple of certain therein described real estate and, on April 29, 1958, decedent was a widower and a patient in the hospital at the Home; that on said April 29, 1958, the decedent and the Home entered into a written agreement, a copy of which was attached to the petition, and that on the same date the decedent executed a warranty deed "to the above described real estate" to the Home; that the said agreement granted to said Martha Ayres and William S. McCool the right to redeem said land within two years following the death of decedent by

payment to the Home of the monies expended by it on the real estate and for services rendered and to be rendered by the Home to decedent during the remainder of his natural life, including his burial expenses; that decedent died on June 21, 1960 and said Martha Ayres and William S. McCool "have not yet exercised their redemption rights"; that it will be in the "better interests of the hospital (Home), the estate, and the distributees" that the real estate be sold; and that the real estate should be offered for sale "jointly" by the personal representative and the Home.

Thereafter, the motion of the Home to withdraw as a party petitioner was sustained by the court and the Home then filed answer in two paragraphs to the petition alleging therein that it was the owner of the legal title to the real estate and prayed that the petition to sell be denied. Martha Ayres answered the petition by admission and denial. William S. McCool answered the petition by four paragraphs, (1) admission and denial; (2) that jurisdiction of the court is confined to order of sale of the real estate and to determine liens; (3) that the contract and deed mentioned in the petition is a security device and the deed is in fact a mortgage; and (4) the Home has not paid to him the $5000 it agreed to pay under the contract. Eva McCool filed a plea in abatement that the court has no jurisdiction to determine her claim.

Martha Ayres filed a cross-complaint, seeking a declaratory judgment as to the rights, status and relations of the parties, and alleging, in rhetorical paragraph six thereof, that the Home is a party interested "by virtue of its lien" for services rendered and money expended. The cross-complaint further alleged that

she possessed the right to redeem the real estate, either jointly with her brother, William S. McCool, appellant, or independently of him if he refused to join with her, and finally prayed for a judgment in partition and that a commissioner be appointed to sell the real estate. The Home filed answer of admission and denial to the said cross-complaint of Martha Ayres, in which it admitted said rhetorical paragraph six thereof to the effect that it had a "lien" on the real estate.

By stipulation, all affirmative pleadings were considered answered or replied to under the Rules of the Supreme Court.

The court, on request, found the facts specially, stated its conclusions of law thereon, and entered judgment accordingly. In substantive effect, the court, by its findings and conclusions of law, construed and interpreted the contract and deed as a conveyance by the decedent to the Home of the fee simple title to the real estate; that appellant, William S. McCool and appellee, Martha Ayres, or either of them, could redeem the real estate on or before June 21, 1962; and that the petitioning administrator had no right to redeem.

For clarity and understanding, it seems proper to set forth the pertinent material parts of the findings and conclusions. Parts thereof not necessary for elucidation of the factual basis of this decision are omitted.

### FINDINGS OF FACT.

1. That The Little Company of Mary Hospital & Home for Chronically Ill, Inc., hereinafter called "Hospital" was prior to 1956 and still is engaged in the operation of a hospital and home for chronically ill persons at San Pierre, Indiana.

2. On September 26, 1956, John F. McCool was admitted to the Hospital and was a patient there until 8:30 A.M., September 21, 1959.

3. At the time of his admission to the Hospital John F. McCool was 80 years old. He was suffering from diabetes, which required daily injections of insulin. He was a double amputee of the legs, and required the use of a wheel chair to move about.

. . .

5. When John F. McCool became a patient at the Hospital on September 26, 1956, he was, and had been for many years prior thereto, the owner of the following described real estate in Pulaski County, Indiana:

Northwest quarter of the Northwest quarter;
Southeast quarter of the Southwest quarter;
Southwest quarter of the Northwest quarter;
Northwest quarter of the Southwest quarter;
Southeast quarter of the Northwest quarter;
Southwest quarter of the Southwest quarter;
all in Section Seventeen (17), Township Thirty (30) North, Range Four (4) West, containing 240 acres, more or less.

Such real estate is herein referred to as the "Farm".

6. On April 29, 1959, John F. McCool was the owner of the above described real estate. The State and County taxes thereon were then delinquent. There was a School Fund Mortgage on such real estate, executed by the said John F. McCool on September 26, 1949, in the original principal amount of $6,000.00; the unpaid principal balance was then approximately $2,425.33; and the installments of principal and interest were then delinquent. John F. McCool was then indebted to the Peru Production Credit Association in the approximate sum of $3,300.00 on a promissory note executed by him on February 28, 1958, in the original principal amount of $5,120.00, and such note was then overdue.

7. On April 29, 1959, John F. McCool was unmarried, and was 83 years of age.

8. On April 29, 1959, John F. McCool and the Hospital entered into an agreement in writing, which was duly acknowledged by an officer authorized to administer oaths, and which said agreement is attached to this Finding of Facts, made a part thereof and marked Exhibit "A". Concurrently with the execution of said contract, and on April 29, 1959, the said John F. McCool executed and delivered to the Hospital, his Warranty Deed, which said deed was duly recorded by the Hospital on April 30, 1959, in Deed Record 120, page 347 in the office of the County Recorder of Pulaski County, Indiana. By said deed he conveyed to the said Hospital his 240 acres of real estate. A copy of said Warranty Deed showing the recordation thereof as above set out, is attached to this Finding of Facts, made a part thereof and marked Exhibit "B".

. . .

10. On June 21st, 1960, John F. McCool died. He was then 84 years of age. Herman C. Wuethrich is administrator with the Will Annexed of the estate of the said John F. McCool.

11. That on or about May 19, 1959, the Hospital drew and tendered its check in the amount of $5,000.00 to the order of William S. McCool and Eva J. McCool, and endorsed thereon "By request of and per written agreement with John F. McCool." The check was refused by William S. McCool and voided. The Hospital is ready, willing and able to pay William S. McCool the $5000.00 mentioned in the April 29, 1959 agreement. William S. McCool and his family have occupied one of the two dwellings located on said Farm since the deed dated April 29, 1959, without payment of any rental therefor.

12. William S. McCool is indebted to the Hospital in the sum of $750.00 for Landlord's share of crops for 1959.

13. In May of 1960, the Hospital served written notice on William S. McCool and Eva J. McCool, his wife, for the immediate possession of all of the farm excepting the dwelling occupied by William S. McCool. Hospital rented the fields on the Farm in 1960 and 1961, and received all of the Landlord's share of the produce therefrom in each year.

. . .

15. Since April 29, 1959 the Hospital has liquidated the $2,400.00 School Fund mortgage, has paid the indebtedness due Peru Production Credit Association, has tendered the $5,000.00 to William S. McCool, has paid the taxes assessed against the Farm, and has maintained casualty insurance on the improvements on the Farm. The Hospital has executed a new School Fund mortgage on the Farm in the amount of $6,000.00, the present unpaid amount of which is $5,200.00 plus accrued interest. Payment dates for payment of principal are May 14 of each year. Interest on $5,200.00 accrues at 57.8 cents per day. Taxes for 1961 payable in 1962 are $447.04.

16. On January 23, 1961, the Hospital fully paid the burial expenses for John F. McCool. Such expenses totalled $1204.79 and were paid to Querry Funeral Home, Francesville, Indiana. The arrangements for such burial were not made by the Hospital.

17. From April 29, 1959, to September 21, 1959, the Hospital provided John F. McCool with care, nursing, room, board, medical treatment, the same as the Hospital had theretofore done. After September 21, 1959, the Hospital never again provided any of the foregoing care and services, for the reason that John F. McCool left the Hospital without demand or fault on the part of the Hospital personnel. The San Pierre facilities are the only hospital facilities maintained in Indiana by The Little Company of Mary.

18. The Hospital has kept an account of all money paid and the expenses incurred and paid by it

in performing its part of the agreement signed April 29, 1959. The Hospital has prepared a complete itemized statement of expenditures made by it on the real estate for improvements, maintenance, upkeep, etc., together with the care provided for John F. McCool and for his burial expenses. Such itemized statement also includes items of expense in operating the Farm, and includes items of income recevied from the Farm. Such statement is prepared to date of October 6, 1961. The Hospital has. consulted and employed attorneys for advice as to the Hospital's rights and duties under the contract and Deed dated April 29, 1959, and the Hospital has employed attorneys to represent its interests in the John F. McCool estate proceeding and related matters. The Hospital has incurred extra administrative costs and expenses in handling the John F. McCool account and the Farm account. A reasonable allowance to the Hospital for such items is $1,000.00. Not included in the October 6, 1961 account is the following Farm income and the following Farm expenses:

October 26, 1961 from its farm Manager

| | |
|---|---:|
| from sale of Landlord's share of produce | $2000.00 |
| January 10, 1962—as above | 1000.00 |
| | 3,000.00 |

Expenses:

| | |
|---|---:|
| Second installment State and County taxes payable in 1961 | $ 196.37 |
| Premium on three-year fire insurance policy | 34.00 |
| | $ 230.37 |

The Hospital's Farm Manager has in his possession certain funds out of which he pays certain operating expenses, and for which he accounts to the Hospital. The Balance of such money is $41.47. There is also due from the Hospital a further credit of $6000.00 for funds received from the School Fund mortgage which the Hospital placed against said Farm.

All interested parties have agreed to the account of the Hospital, which shows that as of January 10, 1962, upon redemption of the farm in accordance with the written agreement of April 29, 1959, the Hospital is entitled to receive the sum of $12,222.80 out of which said Hospital is obligated to pay to William S. McCool $5,000.00 less $750.00, or $4,250.00, and the balance of the School Fund mortgage of 5,200.00. Said Hospital is further entitled to interest on its account at 4%, beginning June 21, 1961.

19. William S. McCool and Martha Ayres are the son and daughter respectively of John F. McCool; they are his sole and only heirs at law and they are the distributees named in his Will and Codicil.

. . .

21. The right of redemption mentioned in the contract dated April 29, 1959, has not been exercised by any person. Martha Ayres has indicated her desire to redeem said Farm according to the terms of said contract, but William S. McCool has refused to join with her in such redemption. The contract contains no provision whereby the grantor retained a right of redemption in himself or in his estate. The contract and deed were not intended to be a mortgage.

22. There has been no breach of contract by the hospital and no action has been brought by any party to set aside the deed executed by William S. McCool on April 29, 1959.

Dated this 22nd day of March, 1962. ROBERT E. THOMPSON, Judge. (SEAL).

Exhibit A.

AGREEMENT.

THIS AGREEMENT made and entered into by and between John F. McCool, an adult widower, of Pulaski County, Indiana, who will hereinafter be designated as party of the first part, and The Little Company of Mary Hospital & Home for Chronically Ill, Inc., of San Pierre, Starke County,

Indiana, who will be hereinafter designated as party of the second part, WITNESSETH:

WHEREAS, said The Little Company of Mary Hospital & Home for Chronically Ill, Inc., second party hereto, has for a period of time since September 26, 1956, provided first party with care, nursing, room, board, medical treatment, in fact, practically all the necessities of life, for which care, nursing, room, board, medical treatment, etc., second party has a charge against first party, as of March 31, 1959, a total of $3,136.45; and, said second party agrees to continue to provide for said first party for and during his natural life, and to treat him in every manner as had heretofore been done, for a flat rate of Two Hundred Dollars ($200) per month, to start from the date of the execution of this agreement. However, said charge of Two Hundred Dollars ($200) shall not include any doctor's fees, medicine or laundry, required by and provided for first party.

Second party also agrees to pay and liquidate the following indebtedness owing by first party:

1. Common School fund mortgage against the lands of first party, in the principal amount of $2,400, plus interest accrued and to accrue on said amount.

2. Indebtedness due Peru Production Credit Association, evidenced by personal note of the first party for $3,199.21, together with interest accrued and to accrue on such note.

3. William S. McCool, son of John F. McCool, first party, $5000.00 without interest, as reimbursement for the construction of a residence property on the lands of first party.

4. Current taxes assessed against lands of first party, starting with the taxes for 1958 payable in 1959, and all taxes thereafter.

5. Pay and discharge any special assessments that may at this time be a lien on such lands, and any special assessments which may hereafter become liens.

6. Maintain adequate insurance on the improvements located on the real estate of first party.

7. In the event of the death of first party hereto during the lifetime of this agreement, second party shall pay first party's burial expenses in an amount commensurate with his station in life, but such burial expenses shall not be in excess of $1,000.00.

In consideration for the acts done and performed in the past by second party for first party, and for acts to be performed by second party for and on behalf of said first party in the future and during the lifetime of said first party, first party agrees to convey to second party, by a good and sufficient Warranty Deed, the following described real estate in Pulaski County, Indiana, to-wit:

. . .

Second party shall be entitled to the possession of said real estate from and after the execution of this agreement, and upon delivery of the Warranty Deed to second party; also, second party shall be entitled to all rents, income and emoluments from said real estate, and shall have the full control and management thereof.

It is further agreed and understood that the heirs at law of said John F. McCool, first party hereto, who are his children, namely, William S. McCool, his son, and Martha Ayres, his daughter, their heirs, executors, administrators or assigns, shall have the right to redeem the lands to be conveyed by first party to second party within two (2) years following the date of the death of the said John F. McCool, by paying to second party all moneys expended on said real estate and services rendered and to be rendered by it to first party during the remainder of his natural life, to include the burial expenses of first party, and for all money spent for necessary and ordinary repairs and improvements made on said real estate.

It is further understood, however, that the redemptioners, if any, of said real estate, shall pay interest at the rate of four (4)% per cent on the monies expended on behalf of first party after one year from the date of first party's death, up until the date of such redemption.

There shall be no partial redemption made of said real estate, and no redemption shall be made of said real estate in parcels, but in the event of redemption, such redemption must be made in its entirety, and for the entire tract of real estate hereinbefore described.

Second party shall keep an accurate account of all money paid and the expenses incurred and paid by it in performing its part of this agreement for first party, and if the heirs of first party should demand, it agrees to furnish said heirs a complete itemized statement of expenditures made by it on said real estate for improvements, maintenance, upkeep, etc., together with the care provided for first party during his lifetime and for his burial expenses.

It is specifically agreed and understood that this agreement and the Warranty Deed to be executed to second party for the lands hereinbefore described, shall not be regarded [as] and in no manner is a trust agreement, and shall not be determined to be a trust agreement. In other words, if the conditions of this agreement are carried out and fulfilled by both parties hereto, and there is no redemption by the heirs of first party within two years from the date of his death, the second party hereto shall be the absolute owner, in fee simple, of the real estate herein described.

Time is the essence of this agreement, and the terms, conditions and stipulations herein contained shall extend to and be binding upon the heirs, executors, administrators, assigns and successors of the parties hereto.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals this 29 day of April, 1959.

## WARRANTY DEED.

### Exhibit B.

THIS INDENTURE WITNESSETH: That John F. McCool, an adult widower, of Pulaski County, and State of Indiana CONVEYS and WARRANTS to The Little Company of Mary Hospital and Home for Chronically Ill, Inc., of San Pierre, of Starke

County and State of Indiana for the sum of Ten
and no/100 .................................................Dollars, the
following described real estate situated in Pulaski
County, in the State of Indiana, to-wit:
. . .
In Witness Whereof, the said John F. McCool, an
adult widower, has hereunto set his hand and
seal this 29th day of April, A.D., 1959.

## CONCLUSIONS OF LAW.

"Upon the foregoing findings of facts, the Court
now concludes the law to be as follows:

1. That the agreement executed by the decedent,
John F. McCool, and The Little Company of Mary
Hospital and Home for Chronically Ill, Inc., on
April 29, 1959, and the instrument designated
as a warranty deed executed by said decedent to
said hospital concurrently with the said contract
must be construed together.

2. That by virtue of said conveyance by said deed
and the agreement between said decedent and
said hospital, The Little Company of Mary Hospi-
tal and Home for Chronically Ill, Inc., is the fee
simple owner of the following described real
estate in Pulaski County, to-wit:
. . .
3. That said real estate is subject to a Congres-
sional School Fund mortgage executed by said
Little Company of Mary Hospital originally in
the sum of $6,000.00 upon which there is a balance
unpaid in the principal sum of $5,200.00 with
interest at the rate of four per cent per annum
or 57.8 cents per day from and after May 14,
1961, which school fund mortgage is a first and
prior lien upon said real estate.

4. That by said agreement between the decedent
and said hospital under date of April 29, 1959, the
children of John F. McCool, deceased, namely:
William S. McCool and Martha Ayres, are given
the right to redeem said land on or before June
21, 1962, and receive a conveyance thereof from
said hospital upon the payment by them to said
hospital of the sum of $12,222.80 adjusted as of date
of redemption by debits and credits as per con-

tract, plus interest on the hospital account at the rate of four per cent per annum from and after June 21, 1961, to date of payment and plus interest due on said school fund mortgage to the date of such redemption, it being understood that out of such sum so to be paid to said hospital on the redemption of said land said hospital will be obligated to pay items as follows:

(a) To William S. McCool $4,250.00:

(B) The Congressional School Fund mortgage now against said land in the sum of $5,200.00 plus interest thereon at 57.8 cents per day to date of redemption.

5. That in the event of no redemption by said heirs, said William S. McCool will still be entitled to receive from said hospital the $4,250.00 under said agreement.

6. That said right of redemption as set out in Conclusion Number 4 does not create in said William S. McCool and Martha Ayres any interest in said real estate; that such right of redemption continues only until June 21, 1962, and that unless said right of redemption is exercised by said William S. McCool and Martha Ayres or by either of them for and in their behalf, on or before June 21, 1962, any and all rights of said William S. McCool and Martha Ayres under and by virtue of said agreement creating such right after said June 21, 1962, will have expired and terminated.

7. That neither said William S. McCool nor Martha Ayres, prior to a redemption under said contract on or before June 21, 1962, are entitled to a partition or order of sale of said real estate. That the said Martha Ayres should take nothing by her cross-complaint in so far as it asks for a partition and order of sale of said real estate.

8. That the estate of John F. McCool has no right of redemption of said real estate under said contract and agreement of April 29, 1959; that under said agreement and deed the said estate of John F. McCool has no interest in the real estate hereinabove described; that said contract and deed do not constitute a mortgage, and the petition by the administrator of said estate for an order

of sale of the said real estate as hereinabove described should be denied.

DATED this 22nd day of March, 1962."

The errors assigned are the overruling of appellants' motion for a new trial and that the court erred in its conclusions of law numbered 1 to 6, inclusive, and number 8. The specifications of error in the new trial motion are that the decision is not sustained by sufficient evidence, that it is contrary to law, and that the court erred in its conclusions of law, as above numbered.

The vital and determinative questions on this appeal are whether or not the aforementioned deed was, in fact, an equitable mortgage and, consequently, whether or not the said real estate constituted an asset of the decedent's estate.

A careful examination and analyzation of the special findings made by the court seems to clearly demonstrate that the Warranty Deed given by decedent to the Home, pursuant to the provisions of the written agreement of the parties, both of which were executed as a part of the one transaction, was, in fact, an equitable mortgage, notwithstanding its caption. Apropos, is the statement made in *Kerfoot* v. *Kessener* (1949), 227 Ind. 58, 84 N. E. 2d 190:

" ' . . . The form and names of the instruments are not of controlling effect for the law looks through form to substance and will give effect to the real and dominant intention of the parties when definitely ascertained. . . .' "

Herinafter referred to are some of the facts and factors appearing in the record herein, and in the findings of the court, which seem to clearly and definitely

lead to the conclusion that the decedent and the Home, at the time the contract was made and the deed given, intended the creation of an equitable mortgage as security for a continuing indebtedness running from the decedent to the Home; and that initially it was so recognized by several of the parties hereto who are most vitally affected by the construction of the arrangement entered into by the decedent.

It is noted that the involved written agreement, in the latter part of the WHEREAS clause, provides for a fixed "flat" monthly rate of Two Hundred Dollars ($200) for the care of decedent to start from the date of execution of the agreement, thus establishing a constant rate of indebtedness to the Home which continued on to the time of decedent's death. It is held that when a deed is given in securance of an existing indebtedness, it will be held to be a mortgage. *Calahan* v. *Dunker* (1912), 51 Ind. App. 436, 99 N. E. 1021.

A rather conclusive indication that the parties intended the deed as a mortgage and that the Home intended to hold the real estate as security for decedent's indebtedness, is the provision in the next to last paragraph of the contract that "if" the conditions thereof are carried out and fulfilled by both parties and "there is no redemption" within two years of decedent's death, the Home "shall be the absolute owner, in fee simple" of the real estate. Now, if the parties had intended the deed as a present conveyance of the title to the Home, said provision, as worded, would have been wholly unnecessary and, in fact, without legal application. The stated provision definitely withheld the vesting of any fee title to the real estate in the Home until the accom-

plishment of the expressed precedents. In other words, under the provision referred to, if the debt was not paid within the time allowed, then, and then only, was the fee title to the real estate to vest in the Home as against the appellant, William S. McCool, and the appellee, Martha Ayres. *Wysong* v. *Sells* (1909), 44 Ind. App. 238, 88 N. E. 954. Appellees earnestly contend that the rules of law pertaining to support agreements should be here applied and that, in such cases, it is held that the grantee "takes a fee subject to a condition subsequent." It is difficult, of course, to lay down general rules applicable to all cases. But where the parties, by their agreement, have definitely stated in clear, definite and unambiguous language the terms and conditions they have agreed upon, no room or reason exists for a forced construction contrary to their expressed intention.

The contract contains a specific provision for "the right to redeem the lands" within a certain time after decedent's death. Such a provision is indicative that a mortgage was intended. See 59 C. J. S., *Mortgages*, §23b, p. 59, note 57.

The agreement was dated April 29, 1959. It appears that the decedent, by and through his son, the appellant, William S. McCool, retained possession of the real estate and occupied one of the two dwellings located thereon since the date of the deed, without the payment of any rent therefor. This fact of free occupancy by the said appellant is found as a fact by the court in its special finding number 11. Our court has expressed that the retention of the possession of the land, rent free, is indicative of an intention to mortgage the property. *Barber* v. *Barber* (1946), 117 Ind. App. 156, 160, 161, 70 N. E. 2d 185.

.The agreement provides that the redemptioners of the real estate shall pay interest at the rate of four (4%) per cent on the monies expended by the Home "on behalf" of the decedent after one year from the date of decedent's death. Such provision further substantiates the view that a mortgage was intended. *White* v. *Redenbaugh* (1907), 41 Ind. App. 580, 583, pt. 3, 82 N. E. 110.

It appears from the stipulation of the parties and the special findings of fact by the court that the Home reduced the contract obligation of the decedent by crediting him with the "landlord's" share of all crops received by it from the real estate. Thereby, we think that the parties evinced a clear intention and understanding that the deed did not and was not intended to operate as a discharge of the decedent's existing obligation. *Heath* v. *Williams* (1869), 30 Ind. 495, 508; *Silverstein* v. *Central Furniture Co., Inc.* (1959), 131 Ind. App. 170, 186, 162 N. E. 2d 690. The credit by the Home to decedent's account of the proceeds of the "landlord's" share of the farm crops, in our opinion, leads but to the same conclusion as would be necessarily arrived at if the decedent had paid the Home in cash on his indebtedness instead of utilizing the crops and produce for such purpose. In the latter event it would be difficult to urge that the mortgagor had parted with his fee simple title to the land, notwithstanding the name of the document given by him in pursuance of the transaction.

While we recognize and are cognizant of the fact that the determination of whether or not the deed was in fact a mortgage must rest upon the expressions and provisions of the related documents executed as a part of the original transaction

and subsequent actions of the particular parties thereto and the interpretations they placed upon them, yet, the pleadings of the respective parties in an action involving the same, often indicates the construction placed upon the instruments by the parties themselves who are interested therein and aids in the solution of whether or not a mortgage was intended. The appellee Home was a party to the contract and no doubt understood the intention of the decedent and itself in entering into the arrangement. So, in the beginning the Home considered the real estate an asset of the estate, subject to sale for payment of the estate obligations and joined in the administrator's petition seeking such sale. For reasons not disclosed, it withdrew as such joint petitioner and filed answer that it owned the real estate. Then appellee, Martha Ayres, filed her cross-complaint, alleging therein that the Home was interested in the real estate by virtue of its "lien" for services rendered and monies expended, and that the court should determine such interest. This allegation was admitted by the Home. Now, it would seem logical that if the parties to the contract, and the grantee named in the deed, understood and intended the deed to be an absolute present conveyance of the title of the decedent grantor to the real estate, the Home, knowing such to be the fact, would not have consented to or joined in the administrator's petition for sale nor would it have admitted of record by its own pleading that it held a "lien" on the real estate. We would not have it understood by what we have said that the Home did not possess the right to change its position and adopt a contrary position. Nor do we say that such action is conclusive upon it or decisive as to its intention or that of the decedent in entering into their contract. We are content to say that

such action and pleading by the Home, as one of the parties to the agreement and deed, lends clarity, understanding and weight to the other several facts and factors to which we have already adverted as indicative that the parties to the contract and deed intended and treated the deed as a mortgage and not an absolute present conveyance of decedent's title.

We are not impressed, under the circumstances and facts we have referred to and discussed, with the position advanced by the appellees, Home and Martha Ayres, that "the transaction conveyed the property to the Hospital, and at the same time created in the children an option to buy after grantor's death."

Insofar as the appellee, Home, is concerned, the questions presented on this appeal are now moot and its rights and interests will be unaffected hereby for the reason that the appellee, Martha Ayres, has filed herein her affidavit, which has not been contested by any party, to the effect that she has paid to the Home all sums due it under the contract and has secured a conveyance from the Home to herself and her brother, the appellant, William S. McCool, describing the herein involved real estate.

It appears from the record that at the time of the opening of decedent's estate, the appellant, William S. McCool, was appointed as the executor of decedent's will. Thereafter, the appellee, Martha Ayres, petitioned the court for his removal, on the ground, among others, that said executor had failed to assert that the herein involved real estate was an asset of decedent's estate and that he had failed to file any proceeding for the adjudication of such fact. Said executor was duly removed and the appellee, Herman C. Wuethrich, was appointed and qualified as Administra-

tor with the Will Annexed of the estate. The appellants urge that as the said Martha Ayres previously had successfully asserted that the estate of the decedent had an interest in the real estate, she is now estopped to take a contrary position. However, in view of the conclusion to which we have come, it seems unnecessary to give the matter consideration. Although without any decisive or determinative influence, the varying positions assumed by the interested parties as the case progressed is somewhat thought provoking.

In *Kerfoot* v. *Kessener, supra,* it was said:

"Equity, in case of doubt, will construe a writing as a mortgage rather than a conditional sale."

The record here certainly contains such pleadings and evidence of actions by the Home, one of the parties to the contract, and such pleadings by it, as to clearly demonstrate its uncertainty and doubt concerning the true character of the instruments executed by it and the decedent; and under such, and other, circumstances disclosed by the record, it is readily conceivable that such an apparent state of doubt, viewed in the light of the plain and unambiguous language of the court, becomes irresistibly influential in the judicial determination of the just and equitable construction to be placed upon the instruments here involved, and the position and rights of the parties thereunder.

Appellees assert that if the court erred in its finding that a sale took place, it was harmless error because "it appears as though the rights after John McCool's death were exclusively in the children." Such proposal is necessarily predicated on the theory variously advanced by appellees that the decedent "conveyed a fee simple subject to a condition subsequent" and that the rights of the children were that of "option to repur-

chase or redeem", which rights, as found by the court, were exclusively in the children. However, if, as we think, the decedent's deed to the Home was in fact an equitable mortgage with a contractual agreed and fixed time within which payment of the indebtedness secured by it could be paid, the mortgagor's (decedent's) right to assert his right or equity of redemption was an inseparable and indefeasible incident thereto, whether or not specifically mentioned in the agreement. 36 Am. Jur., *Mortgages*, §184, pages 784, 785, note 2.

The contract contained a statement of the amount charged by the Home against the decedent up to the time of the execution of the agreement and then provided a stipulated monthly rate of charge for services agreed to be rendered by the Home in the future. This provision in the contract, it seems to us, is strongly indicative that the parties thereto did not consider the deed to be and operate as a conveyance of decedent's title to the land in extinguishment of his indebtedness. When said provision is read in connection with and in the light of the later contract provision that upon the failure of redemption within the two year period following decedent's death, the Home "shall be" the absolute owner, in fee simple, it becomes apparent that, at the time the instruments were executed, the Home did not then consider that the deed conveyed to it a present fee simple title upon a consideration of the extinguishment of the existing and future indebtedness of the decedent to it.

Appellees offer the contention that if it be held that the agreement created a mortgage, "there would be the possibility that someday John F. McCool's security would be exhausted, and he would be required to pay

more." Such fact was, of course, a possibility. But the probability thereof is much controverted by the findings of the court as to the age of the decedent at the time the contract was made (83 years of age) and the depreciated condition of his physical body and general health. We are not inclined that such "possibility" is sufficient to establish, as against the already referred to controlling crucial facts and factors involved, that the parties to the agreement, and the decedent, in particular, intended a present conveyance of his title to the land in extinguishment of his indebtedness.

The appellants and the appellees have each urged questions concerning the burden of proof as to the nature of the involved decedent's deed. We find no reason to engage upon such a detailed and inconclusive legal appraisement. We are convinced that the controlling and decisive facts and factors in the case were established without controversy and that such facts and factors establish as a matter of law that the deed executed by decedent to the Home pursuant to their written agreement was, in fact, an equitable mortgage. In our opinion, the decision of the trial court is contrary to law.

Appellees have submitted for our consideration, as an additional authority in support of their position herein, the case of *Westrick* v . *Unterbrink et al.* (1950), 90 Ohio App. 283, 105 N. E. 2d 885. However, the facts delineated in that case are so wholly dissimilar to the facts and circumstances in the instant case as to deprive it of any persuasive influence upon the precise issues and questions here considered. In *Davis and Another* v. *Stonestreet* (1853), 4 Ind. 101, on pages 104 and 105, it is said:

" . . . it is very difficult to deduce any clear, well-defined rule from the books. . . . The element

which is regarded as conclusive in one case, is wholly wanting in another; and *each case seems to be decided very much on its own peculiar circumstances.*

" . . . .

" . . . courts of equity do not regard conditional sales favorably. They are disposed to consider every deed, whatever be its form, which resolves itself into a security for the performance of any act as a mortgage.

" . . . A deed absolute, with agreement to redeem in a year, is in equity a mortgage.

. . . ." (Emphasis supplied)

The judgment appealed from is reversed and the cause is remanded with instructions to sustain appellant's motion for a new trial and for further proceedings consistent herewith.

Mote, C. J., Hunter and Pfaff, JJ., concur.

NOTE.—Reported in 192 N. E. 2d 636, Transfer denied, Landis, C. J.; Achor, J., dissent.