JOHN HUFFMAN AND MYRTLE HUFFMAN, HUSBAND AND WIFE
*v.* BENJAMIN FOREMAN AND EVELYN FOREMAN, HUSBAND
AND WIFE.

[No. 1-1073A175. Filed February 24, 1975.]

*Stephen A. Free, Ging, Free & Brand,* of Greenfield, *James S. Foster, Earnest, Foster & Eder,* of Rushville, for appellants.

*Clarkson & Worth,* of Rushville, *Lineback & Lewis,* of Greenfield, *Brunner, Brown & Brunner,* of Shelbyville, for appellees.

LYBROOK, J.—Defendants-appellants John Huffman and Myrtle Huffman (husband and wife), appeal from a judgment in favor of plaintiffs-appellees Benjamin and Evelyn Foreman (husband and wife) on their complaint for breach of contract. Appellants present the following issues for review:

(1) Whether various findings of fact made by the trial judge were contrary to the evidence and contrary to law.
(2) Whether the trial court erred in making special findings on issues not pleaded.

The testimony at trial, which was largely uncontradicted, reveals that the conflict between appellants and appellees concerns the nature of their respective interests in a parcel of improved real estate located in Hancock County near Greenfield, which prior to July 28, 1970, was owned in fee by Richard Spencer and Caroline Spencer, husband and wife. On that day, Mr. Foreman, as agent for one Evelyn Wittenbeck, agreed to purchase the real estate from the Spencers for the sum of $40,000 to be paid as follows: $10,000 cash down payment, $200 per month beginning September 1, 1970, with the balance of the purchase price plus interest due on or before September 1, 1971. A typical conditional sales contract evidencing this agreement was signed by Foreman and Mr. Spencer on July 28, 1970, and Wittenbeck took possession in September of 1970. Thereafter, in October, 1970, Foreman and Wittenbeck were married and cohabited on the real estate in question.

Although the above conditional sales contract was never recorded, the parties thereto complied with its terms and

conditions until the summer of 1971 when Spencer undertook to repurchase the land. He contacted Mr. Foreman during the early part of that summer and announced that he regretted having sold the property and wished to negotiate a repurchase.

An accord was reached whereby Spencer agreed to pay the Foremans $13,500 consisting of a $5,000 cash down payment and an $8,500 one year note which was to be secured by second mortgages on other property held by Spencer. It was further agreed that the Foremans would pay Spencer $200 rent per month from the date of the repurchase to the time the Spencers took possession.

To impart a degree of formality to this repurchase agreement, Mr. Foreman, on August 5, 1971, signed a document denominated "Assignment of Interest" which read:

### "ASSIGNMENT OF INTEREST

For the sum of $12964.07, I, Benj. Foreman, Agent for Evelyn Wittenbeck, hereby transfer and assign to Richard D. Spencer and Caroline Spencer, husband and wife of Hancock County Indiana all of our rights, title, and interest to contract of sale of real estate dated July 28, 1970: said real estate described as No. 10 Bowman Court, Greenfield, Ind. consisting of Lots No. 66, No. 110, No. 107 Bowman Acres, Hancock County, Indiana. I also state that I am the sole owner of the entirity [sic] of the buyers rights, title, and interest to said contract of sale of real estate. Posession [sic] to said real estate to be given to Richard D. Spencer and Caroline Spencer, husband and wife before December 1, 1971.

Dated August 5, 1971.

s/ Benj. Foreman,

Benj. Foreman, Agent for

Evelyn Wittenbeck"

The record reveals that the difference between the $12,-964.07 consideration designated in the assignment and the $13,500 price originally agreed upon is attributable to certain financial obligations which were satisfied by Spencer during

the period from the making of the repurchase agreement to the subscription of the above instrument.

Subsequent to the execution of the assignment, the Foremans remained in possession of the real estate and tendered monthly rental payments to Spencer through October, 1971. These rental payments were made despite Spencers' failure to either tender the $5,000 down payment or execute the note and accompanying mortgages.

Shortly before October 7, 1971, Spencer contacted appellant Myrtle Huffman and announced that he was experiencing financial difficulties and needed assistance. He informed Huffman that two lending institutions which held mortgages on several parcels of property he owned were threatening foreclosure due to his inability to satisfy loan obligations. He requested Huffman to take title to those properties in order to avoid the impending foreclosures, provided however, that when Spencer became financially able, the properties would be deeded back to him with only costs to Huffman. Included among the mortgaged parcels was the property which Spencer had repurchased from the Foremans.

Huffman agreed to Spencer's request and made arrangements to obtain a loan of $119,000 from Henry County Savings and Loan and a loan of $39,000 from Hancock County Bank. Both loans were to be secured by mortgages on the properties, and the proceeds were to be used to satisfy the outstanding indebtedness of Spencer on the properties. On October 7, 1971, the date set for closing, Spencer and Huffman met at the Henry County Savings and Loan Co. with the institution's president, Mr. Jordan. At that meeting Spencer presented Huffman a copy of the conditional sales contract between Spencer and the Foremans and announced that the Foremans wanted $10,000 for their equity in the property. In the ensuing discussion, Jordan agreed to Huffman's request for an additional $10,000 on the previously negotiated loan bringing the total amount of the loan from the Henry County Savings and Loan to $129,000. It should be noted that this additional $10,000 was appropriated without a complete in-

quiry by either Huffman or Jordan as to the exact nature of the Foremans' interest in the real estate. They neither saw nor inquired about the August 5, 1971, assignment by Foreman. However, they were informed that the Foremans were presently occupying the land as tenants and were paying Spencer $200 rent each month. Nevertheless, the Spencer/Huffman transaction was closed and Spencer tendered a deed to various parcels of real estate including that which was being occupied by the Foremans.

Thereafter, on October 28, 1971, Spencer contacted Mr. Foreman and, without notifying him of the transaction with Huffman, declared that he (Spencer) was attempting to refinance the property which was occupied by the Foremans, but needed cash to pay back taxes before the loan company would agree. Thereupon, Foreman paid Spencer $793.25 in cash for the taxes due and November's rent. However, it should be noted that Huffman had previously paid the real estate taxes on the parcel involved.

During the week following his October 28, 1971, meeting with Spencer, Foreman learned for the first time of the transaction between Spencer and Huffman. He received a letter dated November 1, 1971, from Huffman which informed him that she had taken title to the real estate which they occupied as tenants. The letter requested Foreman to meet with Huffman in order to "work out a satisfactory arrangement."

Although several meetings between Huffman and Foreman followed, no satisfactory agreement concerning the real estate was reached. At no time did Huffman offer Foreman the $10,000 additional mortgage money she received from the Henry County Savings and Loan Co. However, since Foreman steadfastly insisted on payment of the $12,964.07 due from Spencer, Huffman offered to pay the $5,000 down payment leaving Spencer responsible for tendering a note for the balance. Nevertheless, since Spencer was not a party to that agreement it never materialized. Finally, in an effort to resolve the dispute, Foreman offered to once again purchase the property for $40,000. Huffman agreed and further agreed

to give the Foremans credit for the $5,000 indebtedness of Spencer that she had agreed to satisfy, thereby making the net purchase price $35,000. This accord was reduced to writing but never signed.

Before this oral contract could be executed, Mr. Foreman became severely ill and was hospitalized from December, 1971, until February, 1972. Upon his release from the hospital, Foreman presented himself at Huffman's office and offered to pay the $35,000 purchase price. Huffman refused and declared that the price had gone up to $46,000.

Thereafter, in May, 1972, the Foremans initiated this action by filing a complaint for breach of the oral contract against the Huffmans in the Hancock Circuit Court. After various other pleadings and motions, trial was held before the Rush Circuit Court. At the request of appellants, the trial court made special findings of fact and conclusions of law:

"The Court finds specially that:

1. On the 28th day of July 1970, a contract was executed under the terms of which Richard D. Spencer and Carolyn Spencer, husband and wife, (Sellers) agreed to convey to Benjamin Foreman, agent for Evelyn Wittenbeck nee Foreman (Purchasers) certain real estate in Hancock County, Indiana, described as:

Lot Nos. 66, 110 and 107 in Bowman Acres, Hancock County, Indiana.

2. That Purchasers paid the sum of Ten Thousand ($10,000.00) Dollars to Sellers as a part of the purchase price of said contract and made further payments of Two Hundred ($200.00) Dollars per month until the 5th day of August 1971.

3. That on the 5th day of August 1971, Purchasers executed an assignment of interest in and to said contract to Sellers in consideration of an agreement that Sellers would pay to Purchasers the sum of Twelve Thousand Nine Hundred Sixty Four Dollars and seven cents ($12,964.07).

4. That the consideration for said assignment of interest was not paid and therefore failed.

5. That on the 7th day of October 1971, said Richard E. [sic] Spencer and Carolyn Spencer, husband and wife,

made, executed and delivered to defendants, John Huffman and Myrtle Huffman, husband and wife, a deed conveying said above described real estate.

6. That at the time of such conveyance from Spencers to Huffmans, Huffmans had notice of the existence of said contract between Spencers and Foremans and that Foremans had paid the sum of Ten Thousand ($10,000.00) Dollars upon said contract to said Spencers.

7. That on said October 7, 1971, the contract between Spencers and Foremans was yet in full force and effect.

8. That the defendants received the title to said real estate subject to the conditional sales contract between said Spencers and said Foremans.

9. That the time of the transfer of said real estate from Spencer to Huffman, as a part of the consideration thereof, defendant Huffman agreed to pay plaintiffs Ten Thousand ($10,000.00) Dollars due them from Spencer under the conditional sales contract.[1]

10. That neither the conditional sales contract above mentioned nor the rights of the parties thereunder was ever negotiated between plaintiffs and defendants.

11. That defendants refusal to convey said real estate was based on the erroneous assumption of the invalidity or cancellation of said conditional sales contract.

12. That when defendants took title to said real estate, subject to said conditional sales contract, they were obligated either to convey such real estate pursuant to the terms of said contract or pay damages for failure to convey.

13. That the damages for such failure to convey is the sum of Ten Thousand ($10,000.00) Dollars being the amount of the down payment made on the purchase price under the terms of said contract.

14. That plaintiffs occupied said premises as their residence from October 1971 thru March 1972 or a period of six months and that the rental value of said premises was the sum of Three Hundred Fifty ($350.00) Dollars per month or a total of Two Thousand One Hundred ($2,100.00) Dollars.[2]

1. Pursuant to appellants' Motion to Correct Errors, the trial court deleted this finding of fact.

2. This finding was made despite uncontradicted evidence that Foreman had paid rent to Spencer for both October and November, 1971. We further observe that when the assignment was executed, Foreman and Spencer agreed upon a monthly rental of $200.

15. That plaintiffs are entitled to recover of defendants the sum of Ten Thousand ($10,000.00) Dollars, less the rental value of said premises in the sum of Two Thousand One Hundred ($2,100.00) Dollars.

16. That plaintiffs are entitled to recover of and from said defendants the sum of Seven Thousand Nine Hundred ($7,900.00) Dollars.

17. The issues thus found were tried by implied consent of both parties and evidence thereof admitted without objections."

## "CONCLUSIONS OF LAW

1. The law is with the plaintiffs.

2. The issues as decided in the above special findings of fact, although not pleaded, are within the purview of TR. 15(B) and were tried with the implied consent of both parties.

3. That the purported release, hereinabove designated as assignment of interest, failed because of a lack of consideration.

4. That defendants took title to said real estate subject to the rights of plaintiffs under said conditional sales contract."

From the above findings and conclusions, judgment was entered in favor of the Foremans, thereby prompting this appeal by the Huffmans.

As appellants point out, the foundation upon which the trial court based its decision was the finding that since the consideration for the assignment from appellees to the Spencers was not paid, the assignment failed. Attacking that finding, appellants urge that the consideration for the assignment was the *promise* to pay and thus, the assignment did not fail. Appellants therefore suggest that the trial court's finding was contrary to law.

While we agree that the finding was contrary to law, in our opinion neither appellants nor appellees have recognized the reason. Perusal of the trial court's ruling reveals that it amounts to a nullification of an otherwise valid transfer of an interest in real estate due to the failure of the transferee to remit the consideration agreed upon. In

our opinion, such a result constitutes an unreasonable and highly undesirable restriction upon the absolute control of the owner over his property. To permit an otherwise valid transfer of a contingent or vested interest in land to be set aside due to failure of consideration would conceivably create immeasurable confusion, turmoil, and delay in such routine dealings in real estate. For similar reasons, neither inadequacy of consideration, nor even a complete lack of consideration is grounds for setting aside an otherwise valid transfer of a contingent or vested interest in land. See, *McAdams* v. *Bailey* (1907), 169 Ind. 518, 82 N.E. 1057.

While the courts of this state have historically afforded a remedy to those such as appellees who have failed to receive the consideration due for the transfer of their interest in land, the remedy is not an abrogation of the transaction. Rather, if upon looking through the transaction it is apparent that a debt is in fact part of the purchase price or consideration for the interest in the land acquired in the transaction out of which the debt arose, no other obstacle intervening, an equitable lien will be declared upon the land so acquired in favor of the person to whom such debt is due. See, *Dwenger* v. *Branigan* (1883), 95 Ind. 221; *Barrett* v. *Lewis* (1885), 106 Ind. 120; 5 N.E. 910; *Skendzel* v. *Marshall* (1973), 261 Ind. 226, 301 N.E.2d 641.

Thus, contrary to the trial court's finding, rather than causing an abrogation of the entire transaction, Spencers' failure to remit the consideration for the assignment merely gave rise to appellees' remedy of foreclosure of their equitable vendor's lien. See, *Skendzel* v. *Marshall, supra.* We therefore hold that since the trial court's finding was contrary to law, it must be set aside. Further, since the remainder of the trial court's findings, as well as the judgment, stem from its erroneous conclusion as to the ramifications of Spencers' failure to remit the consideration, they must also be vacated.

In light of the above discussion, it is clear that appellees may, if they so choose, proceed to foreclose their vendor's

lien. In such event, inquiry must be made to ascertain if appellants were *bona fide* purchasers, in all that term implies, from the Spencers. If it is determined that appellants were *bona fide* purchasers, the interest they acquired by virtue of the deed from Spencers would be superior to appellees' lien for "it is a fundamental principle of equity jurisprudence that a vendor's lien cannot be enforced against land in the hands of a *bona fide* purchaser." *Hawes* v. *Chaille* (1891), 129 Ind. 435, 28 N.E. 848. In the case at bar, whether appellants occupy the favored position of *bona fide* purchasers depends primarily upon whether they had actual or constructive knowledge of appellees' lien before they accepted Spencers' deed. Here, the undisputed evidence reveals that appellants did have actual notice of the conditional sales contract and further had actual notice that appellees were asserting an interest in the realty. If these facts are sufficient to put a reasonably prudent person on duty of inquiry, appellants are charged with the knowledge that such inquiry, reasonably prosecuted, would impart. For the rule is that whenever one has sufficient information to reasonably lead him to a fact, he must be deemed conversant with it. See, *Kuhns* v. *Gates* (1883), 92 Ind. 66; *Smith* v. *Schweigerer* (1891), 129 Ind. 363, 28 N.E. 696.

In addition to the inquiry to determine whether appellants were *bona fide* purchasers, the nature of the interest which accrued to appellants by virtue of the deed from Spencer must also be determined. The voluntary and uncontradicted testimony of Mrs. Huffman reveals that the deed was executed with the understanding that Spencer was entitled to a reconveyance upon tendering the amount which the Huffmans had invested. This testimony cannot be viewed lightly, for it has long been the law in Indiana that a deed, even if absolute on its face, executed contemporaneously with an agreement to reconvey upon performance of conditions is a mortgage. See, *Ferguson* v. *Boyd* (1907), 169 Ind. 537, 81 N.E. 71, rehearing denied, 82 N.E. 1064; *Sinclair* v. *Guzenhauser* (1912), 179 Ind. 78, 98 N.E.

37; *Smith* v. *Brand* (1878), 64 Ind. 427; and *Mott* v. *Fiske* (1900), 155 Ind. 597, 58 N.E. 1053. Further, it matters not whether the agreement to reconvey is written, contained in the body of the deed, or oral.

The probability of the parties intending the deed to be security for a debt, and as such a mortgage, is further enhanced by much of Mrs. Huffman's uncontradicted testimony. She testified that she did indeed orally promise to reconvey to Spencer when he tendered payment; that there was no written agreement of any kind between her and Spencer; that she intended to make no profit from the transaction, but rather agreed to it as a personal favor to the Spencers; that upon receiving the deed she did not know, nor did she inquire about the actual value of the properties transferred; that she did not pay the Spencers anything for their equity in the properties; that she considered herself obligated to reconvey to Spencer; that she was hopeful that Spencer would soon be financially able to retake legal title to the properties; and that when Spencer was financially able, she would reconvey the properties with only costs to her. While these voluntary admissions by Huffman indicate to this court that the deed from the Spencers to appellants was intended by the parties to be security for a debt, and as such, an equitable mortgage, it is not necessary, for purposes of this appeal, that such a ruling be made. This contingency need only be dealt with in the event of further judicial proceedings concerning the relative rights and liabilities of those with an interest in the subject realty.

Finally, we feel compelled to address appellants' argument concerning the propriety of the trial court's holding that although the issues upon which it based its findings and judgment were not pleaded, they were tried by the implied consent of the parties. Ind. Rules of Procedure, Trial Rule 15(B) supplies the authority for the trial court's action. That authorty, accompanied by appellants' complete failure to either object to the introduction of

evidence on the ground that it was not within the issues pleaded or to request a continuance in order to meet the so-called "new issues" mandates our rejection of appellants' assertion of impropriety. Further insight to this problem may be gained from Judge White's discussion in *Indianapolis Transit System Inc.* v. *Williams* (1971), 148 Ind. App. 649, 269 N.E.2d 543:

> "Whether the 'issues' to be tried in any lawsuit are formed by the pleadings or in a pre-trial order, their function is merely to provide the parties and the court with an itinerary for the journey through the trial. Either party may timely demand strict adherence to the pre-determined route or, if deviation is permitted, the time necessary to prepare to meet the new issue. *But when the trial has ended without objection as to the course it took, the evidence then controls.* Neither pleadings, pre-trial orders, or 'theories' postulated by either party should then operate to frustrate the trier of fact in finding the facts which that evidence (including all reasonable inferences the trier may draw therefrom) convinces him (whether he be a judge or juror), by a preponderance thereof, is true or block him from awarding the relief, if any, which the rules of substantive law say those facts merit." (Emphasis supplied.)

Since, in cases such as the one at bar, *the evidence* is the controlling factor in awarding relief to the parties based upon the applicable rules of substantive law, the trial court quite properly declared that pursuant to TR. 15(B) the parties impliedly consented to litigate any and all issues which that evidence revealed. However, for reasons above stated, it is our opinion that the trial court's award of relief, while just and equitable, was based upon erroneous conclusions as to the substantive law applicable to the facts. The judgment must therefore be vacated and the parties permitted to seek redress anew.

Judgment reversed.

Robertson, C.J. and Lowdermilk, J. concur.