CHARLES W. MOORE AND BETTY MOORE v.
MAURICE FRED LINVILLE AND HELEN ANN LINVILLE.

[No. 1175A202. Filed August 25, 1976.]

*Franklin W. Arkenberg, Griggs and Arkenberg,* of Franklin, for appellants.

*Roy L. Dickinson,* of Franklin, for appellees.

## CASE SUMMARY

LOWDERMILK, J.—Plaintiffs-appellees Maurice Fred Linville and Helen Ann Linville sued for ejectment. Defendants-appellants Charles W. Moore and Betty Moore counterclaimed that Linvilles were holders of an equitable mortgage.

Moores appeal from the trial court's judgment for Linvilles on their complaint and against Moores on their counterclaim.

We affirm.

## FACTS

Prior to May 16, 1974, Moores owned in fee simple the real estate in question, upon which they were building a house.

They had executed a mortgage to First Federal Savings and Loan Association of Franklin to secure their $20,000 note to First Federal.

The real estate was also subject to a mechanic's lien of the Johnson County Farm Bureau Cooperative Assn., Inc.

Moores had accumulated other bills for labor and materials. They were financially unable to meet all the above obligations. Moores' secured creditors had threatened to foreclose their security interests.

Charles Moore approached Maurice Linville, an acquaintance, and asked for money to pay the above obligations as well as future bills incurred in building the house.

On May 16, 1974, Moores executed a warranty deed conveying the real estate to Linvilles. Simultaneously Linvilles and Moores executed a "real estate loan and re-conveyance agreement" which referred to Linvilles as the parties of the first part and to Moores as the parties of the second part and provided in pertinent part:

> "In consideration of Second Party's conveyance of real estate First Party agrees to advance to Second Party a sum of money *NOT TO EXCEED Thirty Five Thousand Dollars ($35,000.00),* to be used as follows:
>
> (i) to pay off a loan in favor of First Federal Savings & Loan Association of Franklin . . .
>
> (ii) to pay off the indebtedness in favor of Johnson County Farm Bureau Co-Operative Association, Inc., as evidenced by their Mechanic's Lien . . .
>
> (iii) to pay the bills, on presentment by Second Party, labor and materials to complete the construction of the residence located on the above described real estate.
>
> (iv) to pay the expenses connected with this Agreement for conveying and reconveying the subject real estate.
>
> "Said monies loaned by First Party to Second Party shall bear interest at the rate of nine per cent (9%) per annum, computed monthly, commencing on date of June *16,* 1974, and continuing on the same day of each month thereafter until the total amount loaned with interest has been repaid in full.
>
> "Said monies loaned, with interest, shall be repaid in full by Second Party to First Party on or before date of January 1, 1975, at which said time First Party will be required to reconvey to Second Party the above described real estate. In

the event Second Party shall fail to repay First Party as herein provided, Second Party herein acknowledges and agrees that First Party shall have the absolute legal and equitable right to sell the said real estate to recover the monies loaned out and all expenses and costs of such sale. . . .

\* \* \*

"Second Party covenants and agrees to purchase a policy of insurance in an amount of not less than Thirty Five Thousand Dollars ($35,000.00), protecting the premises against fire and wind damage, and covering home-owner risks. . . .

"Second Party shall have the right and privilege to occupy and live at the premises on a month to month basis during the terms of this Agreement and are hereby given notice to terminate and quit said premises on date of January 1, 1975, in the event that they are in breach of the terms of this Agreement.

"Second Party shall be obligated to pay all expenses involved in maintaining the premises during the term of this Agreement, including, without limitation, real estate taxes, municipal assessments, ditch assessments, repairs, etc., and to hold First Party free and harmless from all such expenses. . . ."

At trial, Maurice Linville testified that he understood the above transaction to be a purchase of the real estate. He also testified that he considered the documents to constitute security for the funds advanced by Linvilles.

Charles Moore testified that he understood the transaction would convey fee simple title to Linvilles, subject to Moores' right to obtain a reconveyance by complying with the terms of the parties' agreement.

Following the execution of these instruments, Linvilles expended $22,000 to pay off the mortgage to First Federal and the mechanic's lien of the Co-op. They subsequently paid an additional $15,486.23 on behalf of Moores for materials, labor, interest, insurance, taxes and drainage assessments related to the real property.

In August and September, 1974, Moores made interest payments under the agreement, but paid no more interest and failed to repay the funds advanced by Linvilles by January 1,

1975. Nor did Moores secure insurance or pay taxes and other expenses as provided in the agreement.

Linvilles performed no work on the real estate. Moores did, and remained in possession thereof until after Linvilles commenced this action on January 3, 1975.

Although the house was uncompleted at the time of trial, Maurice Linville and Charles Moore each testified that the value of the real property was between $35,000 and $36,000.

The trial court's judgment entry stated, in pertinent part:

"IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court that plaintiffs are the fee simple title holders and entitled to immediate possession of the . . . real estate . . .

\* \* \*

"IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court that defendants take nothing by way of their counterclaim."

## ISSUES

1. Whether the parties created an equitable mortgage.

2. Whether the trial court erred in granting relief in ejectment to Linvilles.

## DECISION

We will consolidate discussion of both issues pursuant to Ind. Rules of Procedure, Appellate Rule 8.3 (A) (7).

Moores contend that the trial court erred in holding that Linvilles were fee simple owners of the real estate and entitled to immediate possession thereof. Moores base their contention on an argument that the facts indicate that the parties created an equitable mortgage.

We adhere to the well-settled Indiana rule that a court may find an equitable mortgage where a deed, absolute on its face, is executed simultaneously with an agreement under which the grantor is entitled to a reconveyance upon performance of conditions. See *Huffman* v. *Foreman*

(1975), 163 Ind. App. 263, 323 N.E.2d 651, and cases cited therein.

In such cases the law "will give effect to the real and dominent intention of the parties" rather than be controlled by the form and names of the instrument. *Kerfoot* v. *Kessner* (1949), 227 Ind. 58, 79, 84 N.E.2d 190. Determining the parties intent involves a case by case approach, as this court stated in *McCool* v. *Ayres* (1963), 136 Ind. App. 72, 95-96, 192 N.E.2d 636, in quoting from *Davis* v. *Stonestreet* (1853), 4 Ind. 101:

> ". . . [I]t is very difficult to deduce any clear, well-defined rule from the books. . . . The element which is regarded as conclusive in one case, is wholly wanting in another; and *each case to be decided very much on its own peculiar circumstances.*" (Original emphasis.)

Factors to which Indiana courts have looked to ascertain an intent to create an equitable mortgage include:

—Pre-transaction negotiations were aimed at protecting the property from claims of other creditors of the grantor of the deeds. *Dorweiler* v. *Sinks* (1958), 128 Ind. App. 532, 148 N.E. 2d 570.

—The grantor was indebted to the grantee prior to the transaction, or became indebted as part of the transaction. *Voss* v. *Eller* (1887), 109 Ind. 260, 10 N.E. 74.

—The instruments provided that the grantor could redeem the land by performing certain conditions within a certain time. *McCool* v. *Ayres, supra.*

—The grantee gave inadequate consideration for the conveyance of the real property. *Dorweiler* v. *Sinks, supra; Barber* v. *Barber* (1946), 117 Ind. App. 156, 70 N.E.2d 185.

—The grantor paid interest to the grantee. *McCool* v. *Ayres, supra.*

—The grantor retained control, possession, and use of the

property where no rent was fixed or paid. *Barber* v. *Barber, supra*.

—The grantor improved the real estate, which a tenant would not likely do. *Id.*

—The grantee did not exercise any control or ownership of the property. *Id.*

Although all the above factors—save for inadequacy of consideration—indicate that the parties presently before this court intended their transaction to operate as an equitable mortgage, the trial court's judgment was not in error.

In an opinion construing another absolute deed coupled with an agreement to reconvey, our Supreme Court, in *Ferguson* v. *Boyd* (1907), 169 Ind. 537, 542-543, 81 N.E. 71, stated:

> "The deed to Boyd was absolute, and the collateral instrument contained no provision making it void upon the performance of a condition. On the contrary, the provision of the latter instrument was that upon repayment the grantee would reconvey. This did not constitute a technical defeasance, although it was, no doubt, sufficient to secure to the grantor an equitable right of redemption. Blackstone says: 'A defeasance is a collateral deed, made at the same time with a feoffment or other conveyance, containing certain conditions, upon the performance of which the estate then created may be defeated or totally undone.' . . . There is little, if any, dissent from the proposition that in such a case as this the grantee has a legal estate." (Citations omitted.) See also *Bach* v. *First National Bank of Vincennes* (1935), 99 Ind. App. 590, 193 N.E. 696; *Watkins* v. *Gregory* (1841), 6 Blackf. 113.

The absolute warranty deed from Moores conveyed legal title to Linvilles; the agreement, which contained no provision voiding said deed upon Moores' performance, could not have re-vested legal title in Moores even had they performed as agreed. *Bach* v. *First National Bank of Vincennes, supra; Ferguson* v. *Boyd, supra; Watkins* v. *Gregory, supra.*

Moores' interest in the real estate following the transaction was an equitable right to compel Linvilles to reconvey the real

property upon Moores' performance. *Bach* v. *First National Bank of Vincennes, supra; Ferguson* v. *Boyd, supra.*

The trial court's relief in ejectment was therefore based on a correct holding that Linvilles were the fee simple owners of the real estate and entitled to immediate possession thereof.

Moores' counterclaim seeking to enforce their interest brought into consideration the maxims of equitable discretion, as our Supreme Court recognized in *Ferguson* v. *Boyd, supra,* at 169 Ind. 547:

> "Where the legal title is in the mortgagee, so that it becomes necessary for the mortgagor to assert his claim of redemption on the equity side of the court, it does not admit of doubt that he must submit his claim to the testing of equity principles. *His right of redemption* may subsequently be lost to him by a fair contract which he has voluntarily entered into for the surrender of such right, or it *may be defeated by other facts, which, upon a consideration of the equities of the whole case, render it inequitable to accord to him the privilege he seeks. . . .*" (Our emphasis.)

In *Ferguson,* the court noted the maxim: "He who seeks equity must do equity."

The facts of the instant case reveal that Moores did not insure the property as agreed, neglected to pay taxes and assessments on the real estate as agreed, and failed to repay Linvilles.

The trial court could have therefore based its judgment against Moores on their failure to do equity in this case.

We find no error in the trial court's holding that Linvilles were fee simple owners entitled to possession or in its denial of equitable relief to Moores.

Judgment affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 352 N.E.2d 846.